2020 IL App (1st) 173163

THIRD DIVISION
December 23, 2020

No. 1-17-3163

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DOOR PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County |
| | ) | |
| AYAD M. NAHLAWI, | ) | 10 L 12931 |
| | ) | |
| Defendant, | ) | Honorable |
| | ) | Alexander P. White, |
| (Mago BB, LLC, | ) | Judge Presiding |
| Third-Party Citation Respondent-Appellant.) | ) | |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Door Properties, LLC obtained a judgment against defendant Ayad Nahlawi for just over $750,000, a judgment we affirmed in all respects in an unpublished order in 2015. See *Door Properties, LLC v. Nahlawi*, 2015 IL App (1st) 131256-U. Now a judgment creditor, Door Properties sought to collect that judgment against Nahlawi (now a judgment debtor) by initiating supplemental proceedings under section 2-1402 of the Code of Civil Procedure. See 735 ILCS 5/2-1402(f)(1) (West 2014).

¶ 2     Specific to this matter, Door Properties served a citation to discover assets on respondent, Mago BB, LLC (Mago). Nearly three years after the citation was served, Door Properties

discovered that Mago had paid at least $15,000 of Nahlawi's attorney fees in various legal matters. Door Properties moved for judgment against Mago, claiming that, contrary to its responses in the supplementary proceeding, Mago did possess property belonging to Nahlawi, as evidenced by its payment of some of Nahlawi's attorney fees.

¶ 3     In response, Mago argued that the $15,000 paid on Nahlawi's behalf was not Nahlawi's "property" as defined by section 2-1402. Instead, the payment of attorney fees was "a gift" and "reciprocation for favors that Nahlawi had done for them in the past." Without conducting an evidentiary hearing, in a written memorandum order, the circuit court concluded that "these types of funds fall within the purview of § 1402(f)(1) and are the type of assets meant to be protected by the legislature." Thus, the trial court entered judgment in favor of Door Properties and against Mago.

¶ 4     We vacate that judgment, as questions of fact exist that do not permit judgment on the papers and arguments alone. We remand for an evidentiary hearing.

¶ 5                                    BACKGROUND

¶ 6     In 2012, Door Properties obtained an approximately $750,000 judgment against Nahlawi. In an effort to collect, Door Properties served a third-party citation to discover assets on Mago, an LLC owned by Nahlawi's parents and friends/business partners, Richard Munoz and Juan Gonzalez. The citation stated, in relevant part:

> "YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or comes due to judgment debtor, until further order of court or termination of the proceedings. "

¶ 7    In 2014, Munoz, as Mago's manager, answered the citation and indicated that Mago did not possess any of Nahlawi's assets or property. Munoz reiterated the same during his citation examination.

¶ 8    More than two years later, in 2016, Nahlawi and his attorney—Kevin Besetzny—appeared in the United States Bankruptcy Court before the Honorable Jacqueline P. Cox on an unrelated matter. (Unrelated for our purposes, at least; it involved the bankruptcy of Mark and Carol Anderson, the latter of whom was a named plaintiff in the original state action that resulted in the $750,000 judgment, and the former of whom was a principal in at least one of the plaintiff companies likewise involved in that lawsuit.)

¶ 9    In the bankruptcy matter, Judge Cox had previously entered judgment against Nahlawi for violating a stay order and had entered a rule to show cause for Nahlawi's failure to pay that judgment. During the hearing on the rule, Besetzny argued that Nahlawi did not willfully fail to pay the judgment but did so only because he lacked the ability to do so.

¶ 10    In obvious frustration over Nahlawi's continued claim that he had no money, Judge Cox directly asked Besetzny who was paying his attorney fees. Besetzny told the court that Mago had paid approximately $15,000 of Nahlawi's legal fees. (Recall that Mago, the corporate entity, consists of Nahlawi's parents and two friends, Munoz and Gonzalez.)

¶ 11    Nahlawi then requested the opportunity to directly address the court about why he shouldn't be held in contempt. As to the payment of his attorney's fees by Mago, he explained:

"I have two people that have worked with and for me for a long time, Rick Munoz, a chef, and Juan Gonzalez, a chef. And after our demise of this because of Anderson, there's a lot of bad feelings. This guy ruined a lot of lives. So when I—they worked for me, and I paid

for their legal fees, and I helped them through life, two Mexican immigrants. *They wanted to pay me back.*" (Emphasis added.)

¶ 12    Judge Cox ultimately found Nahlawi in contempt, reasoning that, if Nahlawi could find a way to get his lawyer paid, he could find a way to pay the judgment she had entered against him.

¶ 13    A year after that bankruptcy hearing, in 2017, Nahlawi sat for a citation examination. Nahlawi continued to insist that he had no assets and was not earning income. When questioned about how he was paying his bills, Nahlawi explained that his parents were taking care of nearly all his expenses. However, he recognized that Mago was paying his attorney fees. He also acknowledged that his friends and family would often give him cash when he needed it. While not formally employed, Nahlawi admitted that he occasionally continued to help his former business partners with their companies.

¶ 14    Shortly after this examination, Door Properties sought a $15,000 judgment against Mago for the payments it had made towards Nahlawi's attorney fees. Door Properties noted that its citation to Mago restrained Mago from transferring any assets or property belonging to Nahlawi, and the court should thus enter judgment against Mago and in favor of Door Properties "in the amount of the value of the property transferred." 735 ILCS 5/2-1402(f)(1) (West 2014).

¶ 15    The motion was supported by the transcripts of the hearing before Judge Cox and Nahlawi's citation examination, as described above.

¶ 16    In response, Mago acknowledged that its manager (Munoz) and member (Gonzalez) had paid those attorney fees but argued that those payments were a gift, gratuitous "reciprocation" for favors Nahlawi had done in the past. In other words, they did not owe Nahlawi that money; they paid it as a gratuitous gesture. The money did not belong to Nahlawi in any way.

¶ 17    Neither party requested, and the court did not hold, an evidentiary hearing. Instead, the court heard arguments on the motion, focused on whether Mago's payment of Nahlawi's debt constituted a "transfer" of "property" belonging to Nahlawi under section 2-1402(f)(1). In sum, Door Properties argued:

> "[W]hat he's just saying is that there is a debt that the third party during the citation paid; they are saying it's repayment of a favor. Now they're saying it's a gift. The word 'gift' isn't used here. Whether it's a gift or whether there's an agreement, some type of contract, whatever the case may be, they disposed of a debt of the judgment debtor to the preference of someone else during the pendency of the citation after being served with the citation, everything.
>
> It is absurd to think that you can say, 'Well, just because I paid the obligation as a favor, then it's not violating the citation.' "

¶ 18    Door Properties focused on the fact that Nahlawi, personally, told the bankruptcy judge that the principals of Mago were "paying him back." Door Properties argued that describing the payment as a "favor" was just a clever way of circumventing the fact it was a legitimate debt:

> " 'Why don't you do me a favor? You just pay my mortgage for me. You don't have to pay me any wages. Just pay my mortgage for me. I have a car payment. Why don't you do me a favor? Pay that for me as well. In fact, here. I'll give you a nice list of all of my bills. Why don't you do me a favor?'
>
> That's violating the garnishment. It's violating the citation. It prevents that third party from acting in this manner, and it's absurd to suggest that anything other than a violation here has occurred."

¶ 19 Mago, on the other hand, argued that the restraining provision did not prohibit it from voluntarily, gratuitously paying Nahlawi's debt, which it claimed is precisely what occurred: "Mago BB had no assets and has no assets of the judgment debtor. So that is undisputed. There is [*sic*] no assets that—of the judgment debtor *** that they are using to pay for the judgment debtor's bills. This is repayment of a gift, repayment of a favor, and the testimony is clear on that."

¶ 20 The circuit court issued a memorandum order entering judgment against Mago. After acknowledging that it was "unable to locate any case law addressing the narrow issue in this case," the court relied on the fact that section 2-1402 is liberally construed. The court recognized Mago's claim that "it was never in possession of any funds or assets belonging to Nahlawi, and that the funds used to pay Nahlawi's attorney's fees were transferred as a gift of favor rather than pursuant to any debt or agreement." Still, the court found that "these types of funds fall within the purview of § 1402(f)(1) and are the type of assets meant to be protected by the legislature." In the court's view,

> "[t]o rule otherwise would seem to allow any debtor that is owed money from another party, pursuant to a prior contract or agreement, to dismiss the contract and instead accept payment in a more informal capacity, as a favor or gift on behalf of prior services. This would subvert the clear intention of the legislature to protect a debtor's assets in the possession of a third party from being dissipated, and allow parties to effectively circumvent the transfer prohibition language included in the third party citation."

¶ 21 While the court "recogniz[ed] that not every single favor accepted or gift received by a judgment debtor during citation proceedings will be improper, the Court finds that this is the type of transaction that was meant to be prohibited by the legislature in crafting § 1402."

¶ 22    Mago moved for reconsideration, reiterating that the question was not whether Mago paid Nahlawi's debts but whether Nahlawi "had any control or legal interest over the money Mago paid [his] attorneys." The court denied the motion to reconsider and held it "did not need to determine whether or not Nahlawi had control over the funds, because that was not the deciding element in rendering judgment. The fact Mago BB was repaying Nahlawi was the sole purpose behind the Court's August 24, 2017 Judgment."

¶ 23    This appeal follows.

¶ 24                                    ANALYSIS

¶ 25    On appeal, Mago claims the court erred in finding that Mago violated the restraining provision of the citation by paying Nahlawi's attorney's fees. Whether certain conduct violates the citation's restraining provision is a question of law we review *de novo*. *National Life Real Estate Holdings, LLC v. Scarlato*, 2017 IL App (1st) 161943, ¶ 20. Our review would be *de novo*, in any event, as we are reviewing trial court findings based solely on the memoranda, exhibits, and oral argument, and thus we sit in the same position as the trial court, owing no deference to any factual findings or credibility determinations from an evidentiary hearing. *Dinerstein v. Evanston Athletic Clubs, Inc.*, 2016 IL App (1st) 153388, ¶ 34.

¶ 26    Section 2-1402 of the Code of Civil Procedure allows a judgment creditor to begin supplementary proceedings against a third party to discover "assets belonging to the judgment debtor that the third party may have in its possession." *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 313 (1989); see 735 ILCS 5/2-1402(a) (West 2014). What constitutes an "asset belonging to the judgment debtor" is to be liberally construed. See *Wells Fargo Bank Minnesota, NA v. Envirobusiness, Inc.*, 2014 IL App (1st) 133575, ¶ 16.

¶ 27    An "asset belonging to the judgment debtor" includes a debt owed to that judgment debtor. See Ill. S. Ct. R. 277(a) (eff. Jan. 4, 2013) (section 2-1402 proceeding may be commenced against "any third party the judgment creditor believes has property of *or is indebted to* the judgment debtor" (emphasis added)); *Poulos v. Litwin*, 193 Ill. App. 3d 35, 40 (1989) ("Read as a whole, [section 2-1402] is intended to reach debts owed to the judgment debtor which would provide 'moneys *** which are *** to become due.' " (quoting Ill. Rev. Stat. 1987, ch. 110, ¶ 2-1402(d)(1))).

¶ 28    Section 2-1402(f)(1) authorizes the citation to include a restraining provision (as Door Properties included here): "The citation may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of *** any property *** belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to [the judgment debtor]." 735 ILCS 2-1402(f)(1) (West 2014). Said differently, the restraining provision requires the third party "to freeze assets" belonging to the judgment debtor that are in the third party's possession. *Kauffman v. Wrenn*, 2015 IL App (2d) 150285, ¶ 25.

¶ 29    The obvious purpose of the restraining provision is to prevent the judgment debtor or third party from disposing of those assets before the judgment creditor can reach them. *Bank of Aspen*, 126 Ill. 2d at 314; *Scarlato*, 2017 IL App (1st) 161943, ¶ 22. Thus, if the citation contains such a restraining provision, and the third-party respondent violates it by transferring or disposing of the assets, the court has options at its disposal, including the one Door Properties sought here—the court may enter judgment against that third party in the amount of the unpaid judgment, or the value of the property transferred, whichever is less. 735 ILCS 2-1402(f)(1) (West 2014); see *Bank of Aspen*, 126 Ill. 2d at 313. The court may also cite the third party for contempt. 735 ILCS 2-1402(f)(1) (West 2014); Ill. S. Ct. R. 277(h) (eff. Jan. 4, 2013).

¶ 30 Of course, this all presupposes that the third party *possesses* assets belonging to the judgment debtor. After all, the only reason a third party would ever be responsible for a judgment against a judgment debtor is if that third party holds assets of the judgment debtor, which the judgment creditor then seeks to reach by way of supplemental proceedings.

¶ 31 Thus, the relevant question is "whether [the] third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *Kauffman*, 2015 IL App (2d) 150285, ¶ 26. And "[i]f the third party possesses no assets of the judgment debtor, then the court has no authority to enter any judgment against the third party in a supplementary proceeding." *Schak v. Blom*, 334 Ill. App. 3d 129, 133 (2002). It is the judgment creditor's burden of showing that the third-party respondent possesses assets of the judgment debtor. *Kauffman*, 2015 IL App (2d) 150285, ¶ 26.

¶ 32 So the question before the trial court was whether Door Properties carried its burden of proving that Mago violated the restraining provision of the citation order by paying legal fees owed by Nahlawi to Nahlawi's attorney. More specifically, the question under the statute is whether Mago "transfer[red] *** any property *** belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to [the judgment debtor]." 735 ILCS 5/2-1402(f)(1) (West 2014).

¶ 33 This case does not involve tangible property like treasury notes sitting in a bank account, or proceeds of an insurance policy. See *Vendo Co. v. Stoner*, 108 Ill. App. 3d 51, 56 (1982) (treasury notes held as collateral for loan to judgment debtor); *TM Ryan Co. v. 5350 South Shore, L.L.C.*, 361 Ill. App. 3d 352 (2005) (insurance proceeds owed to judgment debtor). Nor is this a more complicated situation involving an identifiable pool of money via a line of credit, with the only question being whether the judgment debtor had sufficient control over the money for it to constitute his "property." See *Scarlato*, 2017 IL App (1st) 161943, ¶¶ 35, 40.

¶ 34   This case involves the existence, or non-existence, of a debt. In the view of Door Properties and the trial court, Mago was repaying a debt it owed Nahlawi.

¶ 35   The parties do not dispute that a debt a third party owes to a judgment debtor would be considered the judgment debtor's "property" or "asset." That is clear enough from the language of section 2-1402, which applies not only to tangible property but also property to "*to which [the judgment debtor] may be entitled* or which may thereafter be acquired by *or become due to [the judgment debtor]*.*" (Emphases added.) 735 ILCS 2-1402(f)(1) (West 2014); see *Poulos*, 193 Ill. App. 3d at 40 ("Read as a whole, [section 2-1402] is intended to reach debts owed to the judgment debtor which would provide 'moneys *** which are *** to become due.' " (quoting Ill. Rev. Stat. 1987, ch. 110, ¶ 2-1402(d)(1))). But as we noted, Rule 277 removes all doubt on this question. See Ill. S. Ct. R. 277(a) (eff. Jan. 4, 2013) (section 2-1402 proceeding may be commenced against "any third party the judgment creditor believes has property of *or is indebted to* the judgment debtor" (emphasis added)).

¶ 36   Nor do the parties dispute that, if Mago owed Nahlawi a debt that it satisfied by paying his attorney fees on his behalf, such a payment would be an illegal "transfer" of Nahlawi's "property" under section 2-1402. In other words, the parties agree that, if Mago owed Nahlawi $15,000 (or more) and paid off some or all of that debt by paying the $15,000 to Nahlawi's lawyer, Mago would have violated the restraining provision of section 2-1402(f)(1).

¶ 37   So the only question is whether Door Properties carried its burden of proving that Mago owed Nahlawi a debt in the first place. In our view, Door Properties came nowhere close to carrying that burden.

¶ 38   There was no evidentiary hearing. The only evidence that Door Properties submitted was on paper: the transcripts of the hearing before Judge Cox in bankruptcy court and Nahlawi's

testimony at the citation examination. The bankruptcy court transcript established that Mago paid $15,000 to Nahlawi's lawyer, Mr. Besetzny, but it did not establish that this money was a debt— a legal obligation—that Mago owed Nahlawi. The evidence, if anything, more fully supported Mago's claim that the payment of Nahlawi's legal fees was a gratuitous gesture on the part of Mago's manager (Munoz) and one of its members (Gonzalez).

¶ 39    At the bankruptcy hearing, Nahlawi testified as follows:

"I have two people that have worked with and for me for a long time, Rick Munoz, a chef, and Juan Gonzalez, a chef. And after our demise of this because of Anderson, there's a lot of bad feelings. This guy ruined a lot of lives. So when I—they worked for me, and I paid for their legal fees, and I helped them through life, two Mexican immigrants. They wanted to pay me back.

* * *

So—so my parents and Chef Juan and Chef Rick, who own this, who are being more than kind to take care of some of the stuff that I'm expenses [*sic*], they want to see Anderson brought to justice. They helped me hire Jeff Bunn at the time to pursue Anderson for the money he owes me."

¶ 40    Nahlawi's testimony at the citation examination added little to the analysis. When asked if anyone had lent him money since 2010, Nahlawi identified his parents, his brother, "Chef Juan" Gonzalez, and "Chef Rick" Munoz. He could not give specifics on how much or how often Gonzalez or Munoz gave him money, but it usually consisted of helping pay a bill or expense that cropped up, and the payment was never formalized by a promissory note or any such document. He could not specify whether attorney fees paid to Mr. Besetzny or his previous lawyer, Mr. Bunn,

came from Gonzalez or Munoz personally or from one of the entities they own, such as Mago. He did agree that he'd previously done "favors" for Munoz and Gonzalez.

¶ 41    So the citation examination testimony added nothing. And the most reasonable takeaway from Nahlawi's testimony before Judge Cox was that Nahlawi had helped Munoz and Gonzalez when they first came to this country, and they wanted to repay the favor when the going got tough for Nahlawi. Whether that, in fact, is true is not the point. The point here is that this was the sum and substance of the evidence that Door Properties proffered—sworn testimony on paper, without an evidentiary hearing—and by no means did Door Properties carry its burden of demonstrating that Mago BB owed Nahlawi a *legally enforceable* debt, as opposed to a "debt" in the sense of gratitude or goodwill. There was no testimony in either of these transcripts that remotely established the existence of any debt, much less the amount of that debt or the circumstances surrounding that debt. The mere fact that Nahlawi characterized his friends' payment of his attorney fees as a desire to "pay me back" does not, without more, convert what he described into a legal debt owed to him. Section 2-1402 is not a game of *gotcha*.

¶ 42    As noted above, while the trial court's reasoning was not entirely clear, it did seem to be making a finding that a previous debt existed between Nahlawi and Mago when it wrote that Mago's position here "would seem to allow any debtor who is *owed money from another party*, *pursuant to a prior contract or agreement*, to dismiss the contract and instead accept payment in a more informal capacity, as a favor or gift on behalf of prior services." For the reasons we have given, we cannot accept that finding. The record comes nowhere close to establishing that a "prior contract or agreement" existed, pursuant to which Mago legally owed Nahlawi anything at all.

¶ 43    Notably, however, Door Properties does not really disagree with our take on the facts. Indeed, in its reply memorandum below, Door Properties acknowledged that "[t]his 'pay back'

payment of the attorneys' fees is either made pursuant to some contractual obligation between [Nahlawi] and Mago BB, or the payment is a gift." We agree; it's one or the other, but the evidence does not say which.

¶ 44 The difference, however, is that Door Properties mistakenly believes that it *doesn't matter* which one of those facts is true. Either way, says Door Properties, it is fundamentally unfair to allow Nahlawi to claim he has "no money, assets, occupation, income, or virtually anything of his own" and thereby avoid his obligations to a judgment creditor, while at the same time his expenses are paid by his friends and family. This point is encapsulated by a passage from its brief:

> "If these funds are not considered Nahlawi's property, then what incentive is there to continue holding individuals accountable for their actions? If an individual can persuade a company, friend, or relative to pay for every single expense in their life so that individual can continue to live irresponsibly, what remedy is available to a judgment creditor against this individual's reckless behavior? At some point there needs to be accountability in these types of situations. To rule otherwise would completely undermine the debtor/creditor relationship."

¶ 45 However sympathetic we may be to Door Properties' frustration with a judgment debtor who has managed to remain relatively asset-free while having his expenses subsidized by his family and friends, that complaint does not implicate section 2-1402. If a parent or friend were holding "property" of the judgment debtor—for example, if they owed the judgment debtor money—*that*, of course, would be subject to garnishment by the judgment creditor, as we have already explained.

¶ 46 But a gratuitous payment on the judgment debtor's behalf, out of goodwill or love or familial obligation? That is not covered by section 2-1402(f)(1). And imagine if it were. Imagine

parents who pay for their judgment-debtor child's college tuition and expenses. They don't "owe" their child anything, at least not in the legal sense; they're not paying off a debt to that child. They're doing it gratuitously. Under Door Properties' interpretation of section 2-1402, if the parents were served with a citation that contained a restraining provision, those parents would not be permitted to put their child through college—or if they did, they'd have to pay that same amount in a judgment to the judgment creditor for violating section 2-1402(f)(1), as well as being subject to a contempt finding.

¶ 47    That is not the law. Section 2-1402 does not forbid gratuitous payments to benefit a judgment debtor. It requires only that a third party disclose, preserve, and turn over to a judgment creditor any property or assets in its possession that belong to the judgment debtor.

¶ 48    Our holding is just another way of reiterating the longstanding principle that, in a citation proceeding, a judgment creditor stands in the shoes of a judgment debtor and " ' "may not recover from a third-party citation [respondent] unless the judgment debtor could have recovered from the third-party [respondent]." ' " *Stonecrafters, Inc. v. Wholesale Life Insurance Brokerage, Inc.*, 393 Ill. App. 3d 951, 958-59 (2009) (quoting *Second New Haven Bank v. Kobrite, Inc.*, 86 Ill. App. 3d 832, 835 (1980), quoting *Sobina v. Busby*, 62 Ill. App. 2d 1, 13-14 (1965)). If the third party (Mago) does not owe a legally enforceable debt to the judgment debtor (Nahlawi), then the judgment debtor has no right to recover anything from the third party—and thus neither would the judgment creditor (Door Properties) stepping into the judgment debtor's shoes.

¶ 49    Make no mistake: If Munoz or Gonzalez, gratuitously, out of the kindness of their hearts, simply handed $15,000 to Nahlawi, that money would be subject to attachment by Door Properties—but not because of subsection (f)(1)'s third-party-transfer provision. It would be subject to attachment because it was now in the possession of Nahlawi, the judgment debtor, and

the court could compel Nahlawi to "deliver up" the money to help satisfy the judgment against Nahlawi under subsection (c)(1). See 735 ILCS 5/2-1402(c)(1) (West 2014) ("When assets or income of the judgment debtor *** are discovered, the court may *** (1) Compel the judgment debtor to deliver up, to be applied in satisfaction of the judgment, in whole or in part, money *** so discovered ***.").

¶ 50    If, as Door Properties claims, subsection (f)(1) also applied to the scenario above, then Munoz and Gonzalez would have to pay that same amount, again, to Door Properties (and possibly face a contempt citation), for committing no other crime than trying to gratuitously help a friend. Third parties, by definition, are entities not involved in the underlying lawsuit between judgment creditor and judgment debtor that resulted in a judgment. That is why we have consistently and repeatedly emphasized that, "[i]f the third party possesses no assets of the judgment debtor, then the court has no authority to enter any judgment against the third party in a supplementary proceeding." *Schak*, 334 Ill. App. 3d at 133. We can think of no reason why the law would punish that blameless third party for an act of generosity, and we find nothing in the language of section 2-1402 that would suggest otherwise.

¶ 51    It would be an entirely different story, of course, if the person or entity who paid Nahlawi's lawyer were, in truth, paying off a legally enforceable debt it owed Nahlawi. As we already said, a debt Mago owed Nahlawi would constitute an asset belonging to Nahlawi in Mago's possession, and satisfying that debt by paying Nahlawi's lawyer would be an unlawful transfer under section 2-1402(f)(1).

¶ 52    And there is at least *some* evidence in the record that this may be the case. The record shows that Mago consists not only of Mr. Munoz and Mr. Gonzalez but also Nahlawi's parents,

via a corporate entity called Kiss the Chef. And Nahlawi did testify, in both the bankruptcy hearing and the citation examination, that he performed various tasks for his parents and for Mago.

¶ 53    Was the $15,000 payment to Nahlawi's lawyer a way of compensating Nahlawi for work he performed for Mago or one of Mago's principals (his parents, Munoz, or Gonzalez)? Was there some informal agreement between Nahlawi and his parents, Munoz, and Gonzalez, that Nahlawi would perform some work in exchange for them covering his expenses? There was no testimony indicating so. As noted above, Door Properties didn't seem to think it mattered whether Mago paid those legal fees gratuitously or as repayment of a debt.

¶ 54    As we have explained, it makes all the difference. But we leave room for the possibility that Door Properties might be able to prove that Nahlawi was owed money for work he performed for Mago (or one or more of its principals), and the $15,000 payment to Nahlawi's attorney was in satisfaction of that debt. If the evidence showed as much, the $15,000 payment would be an illegal transfer under section 2-1402(f)(1).

¶ 55    For that reason, rather than reverse the judgment outright, the better course is to vacate the judgment and remand for an evidentiary hearing, as a question of fact existed that did not lend itself to summary disposition on the papers. See *Harmon v. Ladar Corp.*, 200 Ill. App. 3d 79, 83 (1990) (error for court in supplementary proceeding to determine ownership of property based solely on arguments of counsel without evidentiary hearing, when credible dispute existed); *Roy Strom Excavating & Grading Co. v. National Bank of Albany Park*, 4 Ill. App. 3d 561, 567 (1972) (same).

¶ 56                                CONCLUSION

¶ 57    Section 2-1402 does not prohibit Nahlawi's family or friends from acts of gratuitous generosity, such as letting Nahlawi live in a house they own or paying his bills or expenses. If the

payments are not gratuitous, but rather are to pay off a legally enforceable debt they owe Nahlawi—in exchange for work Nahlawi performed, for example—section 2-1402 is implicated. But if the latter scenario is true, Door Properties has the burden of proving it. Because we find a disputed question of fact existed, and the matter was thus not amenable to summary disposition on the papers alone, we vacate the judgment of the circuit court and remand for an evidentiary hearing consistent with this opinion.

¶ 58    Vacated and remanded.

**No. 1-17-3163**

| | |
|---|---|
| **Cite as:** | *Door Properties, LLC v. Nahlawi*, 2020 IL App (1st) 173163 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10-L-12931; the Hon. Alexander P. White, Judge, presiding. |
| **Attorneys for Appellant:** | Kevin S. Besetzny, of Besetzny Law P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kevin K. McCormick, of DeWald Law Group PC, of Arlington Heights, for appellee. |