2025 IL App (1st) 232354-U

FIRST DISTRICT,
SIXTH DIVISION
May 2, 2025

Nos. 1-23-2354 and 1-24-0281, cons.

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| XCEL SUPPLY INC., | ) | |
| | ) | |
|     Plaintiff-Appellant and Cross-Appellee, | ) | Appeal from the |
| v. | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| VICTOR HOROWITZ, | ) | |
| | ) | No. 2009 L 004771 |
|     Defendant | ) | |
| | ) | Honorable |
| (Hydra Properties, LLC, | ) | James E. Hanlon, Jr., |
| | ) | Judge Presiding. |
|     Third-Party Respondent-Appellee and | ) | |
|     Cross-Appellant). | ) | |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) In supplementary proceeding by judgment creditor against third-party citation respondent, respondent's gratuitous payment of judgment debtor's bills did not render it subject to the judgment; and (2) respondent, a limited liability company, is not entitled to attorney fees and costs under section 15(a)(3) of the Rights of Married Persons Act (750 ILCS 65/15(a)(3) (West 2022)).

¶ 2    In 2015, plaintiff-appellant Xcel Supply Inc. obtained a judgment of $468,021.87 against Victor Horowitz. Xcel sought to collect the judgment by initiating postjudgment proceedings under section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2020)) against respondent-appellee Hydra Properties, LLC, a company owned by Victor's wife, Ahuva Horowitz.

¶ 3    On November 21, 2023, the trial court denied Xcel's motion for a turnover order against Hydra, finding Xcel failed to show Hydra held income or property belonging to Victor. On December 21, 2023, the trial court dismissed Xcel's petition to discover assets against Hydra. Xcel appeals from both orders. Hydra cross-appeals from the trial court's January 9, 2024, denial of its motion for attorney fees pursuant to section 15(a)(3) of the Rights of Married Persons Act (750 ILCS 65/15(a)(3) (West 2022)). We affirm.

¶ 4                                    I. BACKGROUND

¶ 5    On April 22, 2009, Xcel filed a breach of contract suit against Victor. Following a bench trial, on July 17, 2015, the trial court entered judgment in favor of Xcel and awarded it $468,021.87 plus statutory interest. We affirmed in *Xcel Supply, LLC v. Horowitz* (*Xcel I*), 2017 IL App (1st) 152277-U. To collect on the judgment, Xcel served its first citation to discover assets upon Hydra on September 14, 2015.

¶ 6                               A. Facts Regarding Hydra

¶ 7    Hydra was formed in 2008 as a limited liability company (LLC). 99% of Hydra is owned by Ahuva; the remaining 1% is owned by Hydra Holdings, LLC, which is wholly owned by Ahuva. Hydra holds membership interests in three LLCs: Sundance Methadone Treatment Center, LLC, Rock Island Supportive Living, LLC, and Fort Armstrong Realty, LLC. All its

income is derived from membership distributions in these three LLCs and is deposited in Hydra's checking account ("Hydra Account"), not Ahuva's personal accounts.

¶ 8       In a deposition on May 4, 2016, Ahuva testified she was a full-time occupational therapist. Although she owned Hydra, she did not know what an LLC was or what the letters "LLC" stood for. Ahuva did not organize Hydra and did not know who did. She had no duties or responsibilities for the company, and she was unsure what its purpose was or whether it did anything. She believed it was formed "[t]o hold assets for Sundance Company and Rock Island," but she did not know what it meant for an LLC to hold assets. She could not recall if she had seen any financial statements or balance sheets for the company. She explained: "[T]hese kind of things just go over me. *** I'm busy with my kids, the home, and my work. And I leave the work up to my husband ***."

¶ 9       Ahuva testified that she had check signing authority for the Hydra Account and wrote checks from that account to pay family expenses, such as insurance payments, dry cleaning bills, and educational expenses for her children. She did not know where the money in the account came from or whether Victor had check writing authority. "I don't really see him writing checks," she said. "I have them all." Ahuva denied having a conversation about needing to get assets out of Victor's name and put them in her company instead.

¶ 10                           B. Procedural History

¶ 11      The present action concerns Xcel's third turnover motion against Hydra, which it filed in September 2023. We summarize Xcel's prior turnover motions briefly.

¶ 12      On May 16, 2016, Xcel filed its first turnover motion against Hydra, seeking turnover of $5,220 in checks from the Hydra Account, which Hydra paid directly to Victor in 2015. On October 13, 2016, the trial court entered a turnover order in the amount of $5,220. We affirmed

in *Xcel Supply LLC v. Horowitz* (*Xcel II*), 2018 IL App (1st) 162986, ¶ 60, based on Victor's admission in an affidavit that he cashed the checks and spent the money in question.

¶ 13    On August 15, 2017, Xcel filed its second turnover motion, seeking turnover of $84,561, representing checks from the Hydra Account that Victor allegedly wrote to third parties in 2015. The trial court initially entered a judgment against Hydra in the amount of $78,811, finding that some of the checks were assets controlled by Victor and used for his benefit. The court commented on Ahuva's deposition testimony, finding it "completely incredible," and stating "it [is] very clear that her knowledge of Hydra and its finances is either completely lacking or she was being coy."

¶ 14    Hydra moved to reconsider, arguing there was insufficient factual foundation regarding the dates the checks were tendered to third parties and the use and beneficiary of the proceeds. Hydra further argued that no Illinois case "holds that the holder of an investment portfolio who does not know all the ins and outs of the portfolio forfeits her ownership interests through lack of such knowledge." The trial court granted Hydra's motion to reconsider and withdrew its judgment order. Xcel did not appeal.

¶ 15    On April 26, 2021, Xcel moved for leave to issue a second citation to discover assets upon Hydra, alleging that Victor assigned a chose in action to Hydra (*Hydra Properties LLC v. Siebzener*, No. 11-CH-12530 (Cir. Ct. Cook County)), a case which Hydra settled. Xcel claimed it was entitled to the settlement proceeds. It further speculated Hydra "may have" added additional sources of income, and it could not rely on Ahuva's testimony to determine whether Hydra was holding assets for Victor, since she was "totally ignorant of all things related to Hydra."

¶ 16    The trial court granted Xcel's motion. Following service of the citation on Hydra, the court ordered Hydra to produce certain documents and records and directed Hydra to appear for a citation examination "through a designated representative with knowledge of Hydra's financial condition." These bank statements showed that Hydra made $513,485 in deposits to the Hydra Account in 2022. Victor was listed as an authorized signatory on the account with no restrictions on his ability to access funds.

¶ 17    Victor was designated by Hydra as its corporate deponent and was examined on July 17, 2023. Victor testified that Hydra is a holding company with membership interests in other companies but no independent operations. He stated that Ahuva owns and manages Hydra and makes decisions for the company, but "there's no decision to be made for years." The company's income comes from dividends, which are overseen by Ahuva.

¶ 18    Victor testified he held no formal position with Hydra, was not compensated for his work with Hydra, and could not recall ever receiving any form of income from Hydra. He acknowledged being an authorized signatory on the Hydra Account. When asked if there were limits on his signatory authority, he replied: "[F]rom a bank point of view, I'm a signatory. I probably could do whatever the heck I want, but I am not an owner of Hydra, so I cannot do it." As a non-owner, he said he had no right to take funds from the account without verbal authorization from his wife. Victor conceded there was no document memorializing his lack of authority over company funds, but he testified he never took funds without authorization despite no "mechanisms in place" to prevent him from doing so.

¶ 19    Victor stated that because Hydra was "a one-person LLC," Ahuva treated its income as "personal money" and used the Hydra Account as a "[r]egular checking account she is using all of the time." Outgoing checks from the account reflected expenditures such as grocery purchases

for the family, payments on the family's health insurance policy, payments of Victor's credit card charges, airline tickets for Ahuva and Victor, and money sent to family members in Israel via Forex. Victor further testified that he lives with Ahuva but does not own their home. Checks from the Hydra Account were written for mortgage payments, property taxes, and home maintenance and repair. Victor acknowledged making 30 transfers through his PayPal account from the Hydra Account, stating: "[I]f you go on the Internet and you buy something, you pay through PayPal."

¶ 20    On September 22, 2023, Xcel filed its third amended turnover motion, which is the subject of this appeal. The third amended turnover motion sought an order requiring Hydra to turn over all funds in the Hydra Account "or so much as is sufficient to satisfy the Judgment." Xcel alleged in the motion that Hydra is "a mere shell, with no operations, created by [Victor] in an effort to hide assets from [his] many judgment creditors." Xcel further alleged Victor "exercises complete and unfettered control" over the Hydra Account.

¶ 21    On November 21, 2023, the trial court denied Xcel's third turnover motion, finding that Hydra's income was not Victor's property and Hydra was permitted to pay third parties—even for Victor's benefit—without incurring liability to Xcel. On December 21, 2023, the trial court entered an additional order dismissing Xcel's second citation to discover assets. Xcel appeals from the November 21 and December 21 orders. See Ill. S. Ct. R. 304(b)(4) (eff. Mar. 8, 2016) (permitting appeals from final orders in a section 2-1402 supplementary proceeding).

¶ 22    Meanwhile, on December 20, 2023, Hydra filed a motion for attorney fees and costs incurred in connection with Xcel's second citation. Hydra's motion was filed pursuant to section 15(a) of the Rights of Married Persons Act (750 ILCS 65/15(a) (West 2022)), which provides that a creditor of one spouse may not assert a claim against the other spouse for a non-family

debt, and the other spouse may recover costs, expenses, and attorney fees incurred in defending such an action.

¶ 23        On January 9, 2024, the trial court denied Hydra's motion. Hydra cross-appeals from the January 9 order.

¶ 24                                II. ANALYSIS

¶ 25                    A. Denial of Xcel's Turnover Motion (1-23-2354)

¶ 26        We begin by considering Xcel's appeal from the trial court's November 21, 2023, order denying its third turnover motion and its December 21, 2023, order dismissing its citation to discover assets. Since the trial court did not conduct an evidentiary hearing or make factual findings, our review of its orders is *de novo*. *Kauffman v. Wrenn*, 2015 IL App (2d) 150285, ¶ 15. Interpretation of section 2-1402 is also a question of law that we review *de novo*. *Itasca Bank & Trust Co. v. Thorleif Larsen & Son, Inc.*, 352 Ill. App. 3d 262, 265 (2004).

¶ 27        Under section 2-1402(a) of the Code of Civil Procedure, a judgment creditor may initiate supplementary proceedings against a third party to discover assets of the judgment debtor and apply them to satisfy the judgment. 735 ILCS 5/2-1402(a) (West 2020). "[T]he only reason a third party would ever be responsible for a judgment against a judgment debtor is if that third party holds assets of the judgment debtor, which the judgment creditor then seeks to reach by way of supplemental proceedings." *Door Properties, LLC v. Nahlawi*, 2020 IL App (1st) 173163, ¶ 30. The judgment creditor bears the burden of proving the third party possesses assets of the judgment debtor. *Schak v. Blom*, 334 Ill. App. 3d 129, 133 (2002). Conversely, "[i]f the third party possesses no assets of the judgment debtor, then the court has no authority to enter any judgment against the third party in a supplementary proceeding." *Id.*

¶ 28    Here, Xcel failed to meet its burden of proving Hydra possessed any of Victor's assets. Victor had no ownership interest in Hydra, held no formal position with Hydra, and received no funds from Hydra after the second citation to discover assets was served. Although Hydra paid certain of Victor's expenses, such as credit card charges and airline tickets, a third party's voluntary payment of a judgment debtor's expenses does not render the third-party donor subject to the judgment. *Door Properties*, 2020 IL App (1st) 173163, ¶¶ 46-48.

¶ 29    *Door Properties* is instructive. In *Door Properties,* Mago, a third-party respondent on a citation to discover assets, was subject to a section 2-1402(f)(1) restraining provision requiring it to "freeze" assets of the judgment debtor in its possession. *Id.* ¶ 28; see 735 ILCS 2-1402(f)(1) (West 2020). While the restraining provision was active, Mago paid $15,000 of the judgment debtor's legal fees. We held that insofar as this payment constituted a gift, it did not violate the restraining provision. "[A] gratuitous payment on the judgment debtor's behalf, out of goodwill or love or familial obligation *** is not covered by section 2-1402(f)(1)." *Door Properties*, 2020 IL App (1st) 173163, ¶ 46. We explained that "[s]ection 2-1402 does not forbid gratuitous payments to benefit a judgment debtor. It requires only that a third party disclose, preserve, and turn over to a judgment creditor any property or assets in its possession that belong to the judgment debtor." *Id.* ¶ 47.

¶ 30    Likewise, Hydra's gratuitous payments of Victor's credit card bills and other expenses do not constitute "assets in its possession that belong to" Victor. *Id.* As such, these payments do not render Hydra subject to the judgment against Victor.

¶ 31    Xcel's reliance on *Nat'l Life Real Estate Holdings, LLC v. Scarlato*, 2017 IL App (1st) 161943, is unavailing. In *Scarlato*, the judgment creditor obtained a judgment against Scarlato and issued a citation to discover assets to Scarlato's bank. Subsequently, the bank advanced a

$3.5 million loan to Scarlato in his individual capacity, as well as two LLCs of which Scarlato was the managing member. *Id.* ¶ 6. The loan proceeds were not disbursed directly to Scarlato, but variously to third parties and accounts belonging to Scarlato's LLCs. Under these facts, the *Scarlato* court held the loan proceeds "belong[ed] to" Scarlato for purposes of section 2-1402. *Id.* ¶¶ 35-36. The court relied on the Seventh Circuit case of *United States v. Kristofic*, 847 F.2d 1295, 1296-97 (7th Cir. 1988), for the proposition that loan proceeds do not remain the lender's property but become the debtor's property. Since Scarlato was a signatory on the loan in his individual capacity, he was a legal owner of the funds even though they were not disbursed directly to him. *Scarlato*, 2017 IL App (1st) 161943, ¶ 37.

¶ 32        *Scarlato* applies where a third-party citation respondent extends a loan to a judgment debtor in his individual capacity. *Id.* ¶ 39. As the court observed, "[i]f the loan documents were only signed by the LLCs, then there would not be a question as to whether the loan proceeds were Scarlato's property." *Id.* ¶ 36. Since there is no allegation that Hydra lent Victor money, *Scarlato* is inapposite.

¶ 33        Xcel next argues that "[t]he Trial Court incorrectly adopted an overly narrow view of Section 2-1402" by finding Xcel could only attach assets "belonging to" Victor. In support, it cites section 2-1402(f)(1), the freeze provision, which prohibits a third-party citation respondent from transferring any property "belonging to the judgment debtor or to which he or she may be entitled *or which may thereafter be acquired by* or become due to him or her." (Emphasis added.) 735 ILCS 5/2-1402(f)(1) (West 2020).

¶ 34        For the first time on appeal, Xcel argues that "acquisition" is a much broader category than "belonging," and encompasses all assets whose use is controlled or directed by the judgment debtor, even if the assets never belonged to him or her. In other words, according to

Xcel, even if the money in the Hydra Account does not "belong[] to" Victor, it still may be considered money "acquired by" him. Xcel urges us to remand this cause to the trial court to determine the amount of funds in the Hydra Account that Victor controlled or directed the use of while Xcel's citation was pending.

¶ 35    Initially, we note that Xcel did not assert this purported distinction between property "belonging to" and "acquired by" Victor in the trial court and has forfeited any such argument. *Dumas v. Pappas*, 2014 IL App (1st) 121966, ¶ 21 ("Issues not raised in the trial court are forfeited and may not be raised for the first time on appeal"). Even if we were to overlook Xcel's forfeiture (see *Pinske v. Allstate Property & Casualty Insurance Co.*, 2015 IL App (1st) 150537, ¶ 19 (forfeiture rules serve as an admonition to litigants rather than a limitation on the reviewing court)), Xcel's contention lacks merit. Xcel does not cite any authority for its expansive definition of "acquired by," nor do we find its interpretation comports with the plain language of the statute.

¶ 36    The fundamental rule of statutory construction is to give effect to the legislators' intent, which is best indicated by the plain language of the statute. *City of Chicago v. Morales*, 177 Ill. 2d 440, 448 (1997). Where the language is clear, we must give it effect without adding limitations or conditions. *Id.* Since the statute does not define the terms "belonging to" and "acquired by," we give these terms their plain and ordinary meaning. *Village of Kirkland v. Kirkland Properties Holdings Co.*, LLC I, 2023 IL 128612, ¶ 50. In plain and ordinary language, once you acquire a thing, it belongs to you. If a third party gives its own assets to a third party— assets which do not belong to you, and which never belonged to you—it would be absurd to suggest you "acquired" them in the process. The statute's distinction between property "belonging to" and "acquired by" the judgment debtor is a temporal distinction, clarifying that

the freeze provision applies to both property previously acquired by the debtor as well as property acquired by him while the citation is pending, but it is not a distinction in kind.

¶ 37    This plain-language interpretation is consistent with how Illinois courts have interpreted section 2-1402. "[W]e have consistently and repeatedly emphasized that, '[i]f the third party possesses no assets of the judgment debtor, then the court has no authority to enter any judgment against the third party in a supplementary proceeding.' " *Door Properties*, 2020 IL App (1st) 173163, ¶ 50 (quoting *Schak*, 334 Ill. App. 3d at 133).

¶ 38    It is apparent that Xcel is frustrated at being unable to attach Hydra's assets even though they are being used to pay Victor's bills at Victor's apparent direction. But as the trial court aptly stated in denying Xcel's third turnover motion, "the law really isn't based on the 'Aw, come on, it's got to be their money' standard." Because Xcel failed to prove Hydra possessed any of Victor's assets, we affirm the trial court's denial of Xcel's third turnover motion and its order dismissing Xcel's citation to discover assets. Accordingly, we need not consider Hydra's arguments regarding *res judicata*, law of the case, and its contention that Xcel's third turnover motion improperly exceeded the scope of its citation to discover assets.

¶ 39    B. Hydra's Motion for Attorney Fees (1-24-0281)

¶ 40    Hydra cross-appeals from the trial court's denial of its motion for attorney fees and costs incurred in connection with Xcel's second citation to discover assets. We review the trial court's statutory interpretation *de novo*. *Itasca Bank*, 352 Ill. App. 3d at 265.

¶ 41    Hydra's motion was brought pursuant to section 15(a) of the Rights of Married Persons Act (Act), which prohibits a creditor with a claim against a spouse or former spouse for a non-family expense from maintaining an action against the other spouse or former spouse for that

expense, with exceptions not relevant here. 750 ILCS 65/15(a)(2) (West 2022). Subsection (a)(3) contains a fee-shifting provision:

"Any creditor who maintains an action in violation of this subsection (a) for an expense other than a family expense against a spouse or former spouse other than the spouse or former spouse who incurred the expense, shall be liable to the other spouse or former spouse for his or her costs, expenses and attorney's fees incurred in defending the action." 750 ILCS 65/15(a)(3) (West 2022).

¶ 42    By its plain language, the fee-shifting provision only applies to a creditor "who maintains an action *** against a spouse or former spouse." The supplementary proceedings at issue in this appeal were not brought against Ahuva, but against Hydra. As an LLC, Hydra is a legal entity distinct from its members with its own legal rights and obligations. *Flores v. Westmont Engineering Co.*, 2021 IL App (1st) 190379, ¶ 29; see also *Burke v. Electoral Bd. of Village of Bradley*, 2013 IL App (3d) 130141, ¶ 29 (alleged debt of LLC could not be imputed to LLC's owner, since it was a separate legal entity). Since Xcel's supplementary proceedings against Hydra were not an action "against a spouse or former spouse," Hydra's motion for fees was properly denied.

¶ 43    *North Shore Community Bank & Trust Co. v. Kollar*, 304 Ill. App. 3d 838 (1999), cited by Hydra on this issue, is inapposite. In *North Shore*, the plaintiff bank sued Kollar, the debtor's spouse, to recover on a promissory note executed by her husband. We affirmed the dismissal of the suit under the Act and found Kollar, a spouse, was entitled to fees under section 15(a)(3). *Id.* at 840. *North Shore* is not applicable here, since no action was brought against Ahuva, Victor's spouse. Rather, it was brought against Hydra, a separate legal entity from its members and owner Ahuva.

¶ 44    Hydra contends that Xcel's pursuit of supplementary proceedings violates section 15(a)(4) of the Act, which prohibits a creditor from "engag[ing] in any collection efforts against the other spouse or former spouse, including, but not limited to, informal or formal collection attempts." 750 ILCS 65/15(a)(4) (West 2022). Without citation to authority, it argues that under this subsection, "both Ahuva personally and her separate income and assets should be protected from all collection efforts related to Victor's business debts." Once again, Hydra ignores the statutory language prohibiting collection efforts against a "spouse or former spouse."

¶ 45    There is no reference in section 15(a)(4) that prohibits engaging in collection efforts against a separate business entity like an LLC, even if owned by a spouse or former spouse. Membership in an LLC does not confer an ownership interest in the LLC's property. *Peabody-Waterside Development, LLC v. Islands of Waterside, LLC*, 2013 IL App (5th) 120490, ¶ 9 (citing 805 ILCS 180/30-1(a) (West 2008) for the proposition that a "member of an LLC is not a co-owner of, and has no transferable interest in, property of a limited liability company"). Members possess an economic interest solely in the distributable cash flow. See 805 ILCS 180/30-1(b) (West 2022).

¶ 46    By setting up Hydra as an LLC with two members, Ahuva and Hydra Holdings, Ahuva took advantage of protecting herself from liability and her personal assets and other LLCs from being reached by creditors. To accept Hydra's position now that Hydra and Ahuva are one and the same would be to admit Hydra is merely a sham, in which case its distinct legal identity ought to be disregarded. This is directly at odds with the prior position Hydra took in defending against Xcel's action to pierce the corporate veil.

¶ 47    Nonetheless, even if we were to accept Hydra's position that Xcel somehow violated subsection (a)(4) by engaging in collection efforts against it, the fee-shifting provision of

subsection (a)(3) remains limited to "action[s] *** against a spouse or former spouse" and creditors shall be liable only "to the other spouse or former spouse for his or her costs, expenses and attorney's fees incurred in defending the action." 750 ILCS 65/15(a)(3) (West 2022). While Hydra may have incurred fees in defending the action against it, Ahuva personally did not, and she is not a party to this appeal. If the legislature wishes to extend subsection (a)(3) to citation proceedings against companies or LLCs owned by a spouse or former spouse, it is free to do so. Until then, we must give effect to the plain language of the statute as written, which is specifically designed to protect the rights of married persons, not separate business entities. See *Morales*, 177 Ill. 2d at 448 ("where the meaning of an enactment is clear and unambiguous, a court must give it effect as written, without reading into it limitations or conditions that the lawmakers did not express"). Since Hydra is not Victor's spouse or former spouse, Hydra is not entitled to fees under subsection (a)(3).

¶ 48                                III. CONCLUSION

¶ 49        For the foregoing reasons, we affirm the trial court's orders denying Xcel's third turnover motion, dismissing Xcel's second citation to discover assets, and denying Hydra's motion for attorney fees under the Rights of Married Persons Act.

¶ 50        Affirmed.