2021 IL App (1st) 190379

No. 1-19-0379

Fourth Division
January 28, 2021

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| JUANITA FLORES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| v. | ) | |
| | ) | No. 17 L 2551 |
| WESTMONT ENGINEERING | ) | |
| COMPANY a/k/a Morey Industries Inc., VVF | ) | The Honorable |
| ILLINOIS SERVICES LLC, and VVF ILLINOIS LLC, | ) | Brendan O'Brien, |
| | ) | Judge Presiding. |
| Defendants | ) | |
| | ) | |
| (VVF Illinois LLC, | ) | |
| Defendant-Appellee). | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Juanita Flores, was injured when storage racks collapsed on her while she was operating a forklift in the course of her employment with VVF Illinois Services LLC (VVF Illinois Services). Plaintiff filed suit against VVF Illinois Services, Westmont Engineering Company (Westmont Engineering), and VVF Illinois LLC (VVF Illinois), the appellee in the instant appeal. VVF Illinois filed a motion for summary judgment, claiming that it was only the landlord of the building from which VVF Illinois Services operated and had no control

over the storage racks that injured plaintiff while she was working. The trial court granted the motion for summary judgment, and plaintiff appeals. For the reasons that follow, we reverse.

¶ 2                                    BACKGROUND

¶ 3        On March 10, 2017, plaintiff filed a complaint against VVF Illinois, VVF Illinois Services, and Westmont Engineering; the complaint was amended several times, and it is the second amended complaint, filed on March 20, 2018, that was the subject of VVF Illinois' motion for summary judgment.[1] Plaintiff alleged that she was hired by VVF Illinois Services as a forklift operator and worked from a building located in Montgomery, Illinois, that was owned by VVF Illinois (the property). On March 13, 2015, plaintiff was operating a forklift when a storage rack filled with merchandise collapsed, causing her injuries.

¶ 4        Counts II (negligence) and V (willful and wanton conduct) of the second amended complaint, the counts aimed at VVF Illinois, alleged that VVF Illinois had a duty to maintain a safe property for its invitees, employees, and licensees and breached that duty by permitting the property to remain in a dangerous condition. The second amended complaint alleged that VVF Illinois was responsible for the maintenance of the storage racks located on the property

---

[1]Plaintiff's claims against the other defendants are not at issue on appeal, but briefly, on June 8, 2017, plaintiff voluntarily dismissed her complaint against VVF Illinois Services without prejudice. On January 29, 2018, plaintiff filed an amended complaint, which added additional allegations against all defendants and also renamed VVF Illinois Services as a defendant. The trial court granted a motion to dismiss one of the counts against VVF Illinois Services on March 13, 2018, and granted plaintiff leave to amend her complaint, leading to the filing of the second amended complaint on March 20, 2018. On May 8, 2018, the trial court dismissed certain counts aimed at VVF Illinois Services, with prejudice, because plaintiff's only remedy against her employer was the Workers' Compensation Act and granted VVF Illinois Services' motion to dismiss part of a third count without prejudice, ordering plaintiff to file an amended complaint removing the stricken part of that count; the remaining count against VVF Illinois Services was severed from the rest of plaintiff's claims on July 25, 2018. Proceedings against Westmont Engineering continue, and Westmont Engineering filed a third-party complaint for contribution against VVF Illinois Services on March 7, 2019. While we discuss the second amended complaint, the allegations concerning VVF Illinois are identical in both the second and third amended complaints.

and that, at the time of plaintiff's injury, the storage racks were not secured and in disrepair and created an unnecessarily dangerous working environment for plaintiff. The second amended complaint further alleged that VVF Illinois knew, or should have known, that the storage racks had been installed and maintained in a negligent manner and that it was foreseeable that an individual such as plaintiff would be working near the storage racks. Count V also alleged that VVF Illinois knowingly and intentionally violated safety standards and regulations.

¶ 5     On May 10, 2018, VVF Illinois filed a motion for summary judgment, claiming that, while it was the owner of the property, it was not in possession or control of the property because it had leased the property to VVF Illinois Services, a separate entity. VVF Illinois claimed that VVF Illinois Services was obligated to keep the property in good condition and that VVF Illinois did not assume any maintenance obligations under the lease, other than maintaining the structure of the property and the underground utility lines and sewer pipes. VVF Illinois further claimed that there was no evidence that any issues with the storage racks were latent defects that VVF Illinois was aware of and concealed. Accordingly, VVF Illinois contended that it did not owe plaintiff any duty and was entitled to judgment as a matter of law.

¶ 6     In response to the motion for summary judgment, plaintiff claimed that VVF Illinois and VVF Illinois Services were "intertwined," that VVF Illinois had control over the storage racks, and that it had an obligation to maintain the racks. Plaintiff further contended that VVF Illinois was the owner of the racks and had notice of their dangerous condition prior to leasing them to VVF Illinois Services.

¶ 7     Attached to the motion for summary judgment and plaintiff's response were several documents, including (1) the affidavit and deposition testimony of Kurussh Amrolia, (2) the

deposition testimony of Curt Konrardy, (3) the lease between VVF Illinois and VVF Illinois Services, and (4) documents purporting to be from the Occupational Health and Safety Administration (OSHA) concerning plaintiff's injury.

¶ 8        Amrolia testified that he was the manager of VVF Intervest, LLC (VVF Intervest), the sole member of VVF Illinois, and testified to the organizational structure of the similarly named companies at issue: there was a parent company in India,[2] which owned a company called VVF America, Inc. VVF America, Inc., owned VVF Intervest. VVF Intervest was the holding company for VVF Illinois and VVF Illinois Services, among others, and VVF Intervest was manager of both entities; Amrolia was the manager of VVF Intervest. Amrolia testified that VVF Illinois was created solely to hold title to the property and that neither VVF Intervest nor VVF Illinois had any employees, while VVF Illinois Services did. As manager of VVF Intervest, Amrolia acted on behalf of both VVF Illinois and VVF Illinois Services.

¶ 9        Amrolia testified that, prior to the acquisition of the property at issue, there was already a functioning business operating inside, operated by Henkel, owner of the Dial and Right Guard brands, which were involved in manufacturing soap and deodorant sticks. VVF Intervest, the holding company, acquired the business lock, stock, and barrel, including all equipment and employees; VVF Intervest did not make any changes to the property or its employees, and the employees remained with the business after the acquisition.

¶ 10        In connection with VVF Intervest's purchase, Amrolia had several meetings with Henkel, and visited the property once. When he visited the property prior to its acquisition, he did not inspect the property "for its adequacy" and merely walked through the property. Amrolia was interested in the financials, and "[t]he general cleanliness, if the lines are humming, producing

---

[2]The record on appeal does not contain the name of the Indian parent company.

the product, how is the product looking? Things like that. General condition." Amrolia testified that he was "not really" searching for safety issues because he knew that the existing staff would be staying on, including the "safety and environmental people." He further testified that "nothing stood out or glaringly came across that needed any attention" during his visit. Amrolia did not inspect the storage racks that were present and visible at the property.

¶ 11       Amrolia testified that after VVF Intervest purchased the property and its business, he "turned around and made VVF Illinois the landlord, and then VVF Illinois leased the building and the premises to VVF Illinois Services."[3] Amrolia testified that VVF Illinois acquired the property from VVF Intervest on January 26, 2009, and entered into the lease with VVF Illinois Services on the same day. Amrolia testified that he signed the lease on behalf of both VVF Illinois and VVF Illinois Services.[4] As noted, VVF Illinois was created solely to hold title to the property operated by VVF Illinois Services, making them a tenant and giving them the control over the equipment in the factory, including the storage racks in question.

¶ 12       The lease provided that it was between VVF Illinois and VVF Illinois Services and was for the lease of the property and all of the equipment located therein. The lease provided that VVF Illinois Services was to pay VVF Illinois rent in the amount of $221,000 per month, plus additional rent consisting of property taxes, an administrative fee, and sums for insurance and repairs. Under the terms of the lease, VVF Illinois was obligated to "maintain the roof, foundation and the structural soundness of the exterior walls of the Premises in good repair.

---

[3]Amrolia was not aware of whether the property was conveyed to VVF Illinois by VVF Intervest or how VVF Illinois became the landlord, testifying that "[t]hat is a question for our business attorneys."

[4]The lease showed that it was signed on behalf of VVF Illinois by "VVF Intervest, LLC, Its Sole Member," with the signature of "Kurussh Amrolia, Manager," and was similarly signed on behalf of VVF Illinois Services by "VVF Intervest, LLC, Its Sole Member," with the signature of "Kurrush Amrolia, Manager."

[VVF Illinois] shall also maintain, and keep in good repair, the underground utility and sewer pipes outside the exterior walls of the building on the Premises." In turn, VVF Illinois Services was obligated to "keep and maintain all parts of the Premises (except those for which Landlord is expressly responsible under the terms of this Lease) in good condition, promptly making all necessary repairs and replacements."

¶ 13     With respect to the running of VVF Illinois Services, Amrolia testified that there were approximately 325 employees at the time of plaintiff's injury and that he had no role in the hiring of employees. Amrolia was not involved with the day-to-day operations of VVF Illinois Services, but in his capacity as manager of VVF Intervest, he had communications on a daily basis with VVF Illinois Services' vice president, Konrardy, about "the P&L financials, our big customers, banking relationships, and details the parent company in India would like to see."

¶ 14     Amrolia testified that, after the property had been leased to VVF Illinois Services, he would visit the property annually or, at most, quarterly. During his visits, he would be looking to "[a]gain, the general G&P, the upkeep of the equipment, the product quality that they are running on the lines, things like that." Amrolia did not pay any particular attention to the forklifts or storage racks. When he walked through the property, he would be accompanied by several managers from VVF Illinois Services. Amrolia testified that VVF Illinois Services was responsible for maintaining the storage racks, and VVF Illinois never had any communication with VVF Illinois Services about the racks prior to plaintiff's injury, to his knowledge.

¶ 15     Amrolia testified that if there was a potential violation of OSHA regulations, he would be included on such communications. Amrolia testified that he was aware that there had been an OSHA investigation after plaintiff's injury but was "not aware" if OSHA had determined that there were any violations in connection with the storage racks. Amrolia recalled receiving e-

6

mails in 2015 but could not recall the contents of those e-mails. Amrolia was unaware whether any subsequent remedial measures were taken after plaintiff's injury and was unaware if the storage racks that collapsed were the same ones that had been present prior to the acquisition of the property.

¶ 16    In his discovery deposition, Curt Konrardy,[5] an engineer, testified that, at the time of plaintiff's injury, he was VVF Illinois Services' vice president of operations for North America. Konrardy had been the plant manager prior to the time VVF Intervest purchased the property and remained an employee of VVF Illinois Services when it took over the business in 2009. In 2010, he was promoted by Amrolia from plant manager to his position as vice president of operations for North America. Konrardy testified that Amrolia was his supervisor and he reported to Amrolia on a regular basis. However, Amrolia did not oversee the day-to-day operations at VVF Illinois Services. Konrardy testified that he considered Amrolia his "boss" and that he did not realize until a few years ago that VVF Illinois and VVF Illinois Services were separate entities and may not have known about the distinction at the time of plaintiff's injuries. Konrardy testified that Amrolia had the ability to hire and fire employees at Konrardy's level but that "those reporting below me was something he expected me to manage."

¶ 17    Konrardy testified that, after the purchase of the property and the business, everything from the old business remained the same "in terms of the employees, the location, the fixtures, and the racks that were in the warehouse." Konrardy testified that he was in charge of the day-to-day operations at VVF Illinois Services and only discussed "[h]igher magnitude" issues with

---

[5]Konrardy's name is spelled various ways throughout the record. We use the spelling that Konrardy provided during his deposition.

Amrolia, such as annual budgets, monthly financial results, and negotiations with certain customers. Konrardy could not recall ever discussing safety issues with Amrolia, testifying that "[n]ormally if there's things that were safety related that I thought we needed to do *** that would be a decision that would fall within myself." He never discussed the storage racks with Amrolia and did not know whether the storage racks had been changed in any way between 2008 and 2015. Amrolia periodically visited the property and walked through the production lines and the warehouse; Konrardy testified that Amrolia "normally was looking at housekeeping and cleanliness" in the warehouse.

¶ 18    Konrardy testified that VVF Illinois and VVF Illinois Services both listed the property as their registered address, so mail to both entities would be sent to the same location, where it was sorted in the mailroom and placed into the correct boxes. Konrardy testified that he was not aware of rent payments from VVF Illinois Services to VVF Illinois for the use of the property; if rent was being paid, the plant controller would be in charge of that payment.

¶ 19    Konrardy testified that he was aware of an OSHA report that had been completed after plaintiff's injury. He recalled that the report found that the racks had been damaged prior to the incident but could not recall specific details; he testified that he had not directed any repairs to the racks prior to the incident nor had he discussed any repairs with Amrolia. Konrardy testified that, if any repairs had been made, it would have been Konrardy's decision, and any contact with Amrolia "would have been more or less informing him." Konrardy also recalled the OSHA report making findings about the lack of anchor bolts and load limit stickers but again could not recall specific details. Konrardy testified that he believed that OSHA had issued citations arising from the incident and that all of the issues had been remedied, all fines that had been levied had been paid, and all deficiencies in the racks had been remedied.

¶ 20    A copy of a document that purported to be a "Citation and Notification of Penalty" from OSHA was attached to plaintiff's response to the motion for summary judgment; it was on OSHA letterhead and was addressed to VVF Illinois Services. The document was dated September 14, 2015, and showed one "Serious" violation in that "[e]mployees were exposed to struck-by hazards when they were required to work around loaded storage racks that were damaged and were not marked to indicate capacity." A description of the incident in a "Violation Worksheet" provided:

> "Employees were exposed to struck-by hazards when they were required to work around storage racks that were damaged. The lower legs on multiple sections of the racks were damaged and posed a hazard of collapsing in the areas where employees were assigned to work. The racks were full of product/merchandise without regard for the damaged/weakened sections.
>
> On 13 March 2015, an employee was injured when part of the racking system #4-21 collapsed and the [employee] was struck by packaging material. The racks were not anchored to each other, which would have helped prevent the rack from collapsing. The anchors holding the racks into the concrete floor were pulled out and were approximately 3 inches. No evidence obtained during the inspection directly supports or refutes that the racks failed due to the legs being damaged prior to the accident."

The violation worksheet further provided that none of the racks were marked with the load capacity.

¶ 21    On January 28, 2019, the trial court entered an order granting VVF Illinois' motion for summary judgment, finding:

"The Court finds as a matter of law th[at] no duty is owed by the Landlord; the Court

also finds that there is no just cause to delay enforcement or appeal of this order

pursuant to Supreme Court Rule 304(a); this order being final and appealable. The

motion for summary judgment of VVF Illinois LLC is granted."

This appeal follows.

¶ 22                                                    ANALYSIS

¶ 23        On appeal, plaintiff claims that the trial court erred in granting summary judgment in favor

of VVF Illinois because VVF Illinois controlled the storage racks and had notice of their

dangerous condition. A trial court is permitted to grant summary judgment only "if the

pleadings, depositions, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The trial court must view

these documents and exhibits in the light most favorable to the nonmoving party. *Home

Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial

court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v.

Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we

perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v.

Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 24        "Summary judgment is a drastic measure and should only be granted if the movant's right

to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However,

"[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment."

*Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for

summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618,

624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 25    In the case at bar, plaintiff claims that the trial court erred in finding that VVF Illinois owed no duty to plaintiff. To state a cause of action for negligence, a complaint must set forth facts that establish (1) the existence of a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). Whether a defendant breached its duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters for a fact finder to decide. *Marshall*, 222 Ill. 2d at 430. However, whether a duty exists is a question of law for the court to decide. *Marshall*, 222 Ill. 2d at 430. Thus, if VVF Illinois owed no duty to plaintiff, her claims fail as a matter of law. See *Sheffer v. Springfield Airport Authority*, 261 Ill. App. 3d 151, 152-53 (1994) ("There can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff.").

¶ 26    Property owners have a duty to exercise ordinary care in maintaining their property in a reasonably safe condition. *Nguyen v. Lam*, 2017 IL App (1st) 161272, ¶ 20. However, " '[o]nly the party in control of the premises can be held liable for a defective or dangerous condition

on the premises.' " *Hanna v. Creative Designers, Inc.*, 2016 IL App (1st) 143727, ¶ 22 (quoting *Hilgart v. 210 Mittel Drive Partnership*, 2012 IL App (2d) 110943, ¶ 38). "It is axiomatic that if a landlord retains control of a portion of the premises leased to the tenant it has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition. [Citations.] Conversely, a landlord is not liable for injuries caused by a defective condition on the premises leased to a tenant and under the tenant's control." *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 220-21 (1988).

¶ 27    "The basic rationale for lessor immunity has been that the lease is a conveyance of property which ends the lessor's control over the premises, a prerequisite to the imposition of tort liability." (Internal quotation marks omitted.) *Gilley v. Kiddel*, 372 Ill. App. 3d 271, 275 (2007). There are exceptions to this general rule, however, and thus, for instance, "a lessor may be liable (1) where the lessor has expressly agreed to keep the premises or parts of it in good repair; or (2) where the lessor has voluntarily assumed the maintenance obligation by its conduct." *Fan v. Auster Co.*, 389 Ill. App. 3d 633, 648 (2009); see also *Hanna*, 2016 IL App (1st) 143727, ¶ 32 (holding a tenant was not responsible for maintaining countertops injuring a contractor when the landlord was responsible for fixing and maintaining the fixtures in the premises).

¶ 28    In the case at bar, the trial court granted summary judgment in favor of VVF Illinois because it found that VVF Illinois owed no duty to plaintiff. On appeal, plaintiff argues that the trial court should not have applied typical landlord-tenant law, because VVF Illinois retained control of the premises. Plaintiff's argument is based on her claim that VVF Illinois and VVF Illinois Services "were so intertwined that they were essentially the same company

with ownership and control of the subject racks and even the employees" of VVF Illinois Services.

¶ 29    A limited liability company, as both VVF Illinois and VVF Illinois Services are, is a legal entity distinct from its members, which has its own legal rights and obligations. *Peabody-Waterside Development, LLC v. Islands of Waterside, LLC*, 2013 IL App (5th) 120490, ¶ 9. "It is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors and officers and, generally, from other corporations with which it may be affiliated." *Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 204 (1981). On certain occasions, the equitable remedy of piercing the corporate veil allows courts " 'to pierce the veil of limited liability where the corporation is merely the alter ego or business conduit of another person or entity.' " *Angell v. Santefort Family Holdings LLC*, 2020 IL App (3d) 180724, ¶ 20 (quoting *Gajda v. Steel Solutions Firm, Inc.*, 2015 IL App (1st) 142219, ¶ 23). However, courts are reluctant to pierce the corporate veil, and a party asserting the doctrine "has the burden of making a substantial showing that the entities are not separate and distinct." *Angell*, 2020 IL App (3d) 180724, ¶ 22. "Generally, before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Baker*, 86 Ill. 2d at 205.

¶ 30    In the case at bar, the record shows that the activities of VVF Intervest, VVF Illinois, and VVF Illinois Services were so interconnected that we cannot say as a matter of law that VVF Illinois Services alone was responsible for plaintiff's injuries. As plaintiff notes, the registered address of both VVF Illinois and VVF Illinois Services was the same, and both shared the same

manager. Our supreme court has cautioned that "the use of common officers and directors" does not, in itself, render one entity responsible for the obligations of another. *Baker*, 86 Ill. 2d at 204. As our supreme court noted, "[t]hese practices are common and exist in most parent-subsidiary relationships." *Baker*, 86 Ill. 2d at 204-05. However, Amrolia's involvement was more than merely being a common manager. Amrolia testified that he was the *only* member of VVF Intervest, VVF Illinois, and VVF Illinois Services, meaning that he was the only individual who was permitted to make any decisions on behalf of those entities; there were no officers, directors, or shareholders. Additionally, the record shows that the distinctions between VVF Intervest, VVF Illinois, and VVF Illinois Services were anything but clear. Indeed, Konrardy testified that he was not even aware until relatively recently that VVF Illinois and VVF Illinois Services were separate entities and that he considered Amrolia his "boss." Both Amrolia and Konrardy referred to "VVF" as a whole and did not draw distinctions as to whether certain activities were conducted on behalf of VVF Intervest, VVF Illinois, VVF Illinois Services, or even their ultimate parent company in India. Amrolia was also unable to specify what role he was playing when he initially walked through the property prior to its acquisition. We thus cannot say, as a matter of law, that VVF Illinois has no liability for plaintiff's injuries.

¶ 31    In support of her argument, plaintiff relies on *Fan*, a case which provides guidance to our analysis here. In that case, we were asked to determine which party had the responsibility to repair an elevator on the premises at issue. The original owner of the property had leased the property to a tenant, which subsequently subleased it to a third company. As part of our analysis, we considered whether the original tenant voluntarily assumed a maintenance obligation with regards to the elevator, regardless of the terms of the sublease. We noted that

"[a] lessor voluntarily assumes a maintenance obligation when it continues to maintain and to retain control over the aspects of the premises at issue." *Fan*, 389 Ill. App. 3d at 652. In examining the record before us, we determined that the affairs of the tenant and the sublessee "were so intertwined that it is impossible for us to say on the record before us whether it was [the tenant] or [the sublessee] that maintained control over the elevators." *Fan*, 389 Ill. App. 3d at 652. We pointed out a number of facts that created a question of fact as to whether the tenant retained control over elevator maintenance, including: (1) that the president of the tenant company was also an investor in the sublessee company and could sign for both companies, (2) that the president of the tenant company hired and, later, fired the manager of the sublessee company, (3) that an employee of the tenant company performed general maintenance on the premises, and (4) that the employee who made maintenance calls for the sublessee company worked for the tenant company in the same capacity before and after working for the sublessee company and was required to inform the president of the tenant company of any maintenance problems and to obtain his approval before undertaking any work. *Fan*, 389 Ill. App. 3d at 652-53. We found that "[t]hese facts establish that [the president of the tenant company], and people working for him or at his direction and control, exercised a great deal of control over the activities taking place on the *** premises," giving rise to a question of fact as to whether the tenant company retained control over elevator maintenance even after the sublease. *Fan*, 389 Ill. App. 3d at 654.

¶ 32    In the case at bar, as in *Fan*, there are several facts that suggest overlap between VVF Illinois and VVF Illinois Services. First, both entities share VVF Intervest as their sole member, and Amrolia signed the lease on behalf of both parties; Amrolia testified that VVF Illinois was created solely to hold title to the property. While the lease provided that VVF

15

Illinois Services was required to pay monthly rent to VVF Illinois, Konrardy was unaware of any rent payments, and there is no evidence that any such rent payments were ever made. Both entities also shared the same registered address and registered agent. Additionally, while Konrardy handled the day-to-day operations at the property, he reported to Amrolia, and Amrolia had the power to fire him. Konrardy also testified that, if issues became sufficiently important, he would raise them with Amrolia, and that he often communicated with Amrolia. Amrolia also testified that he would have been made aware of any OSHA violations. Amrolia also periodically visited the property, conducting walk-throughs to make sure everything was running smoothly, and also visited the property prior to its acquisition. Finally, we note that Amrolia interchangeably referred to himself as member and as manager of the various entities. The distinction is material for the purpose of our analysis, as Amrolia testified that he was the only individual in a management position for all of the entities. This serves to highlight the lack of clarity in his position and sets up factual issues. Thus, there are numerous factual questions as to the roles of the various entities, and summary judgment on the issue was therefore inappropriate. See also *Angell*, 2020 IL App (3d) 180724, ¶ 24 (finding summary judgment inappropriate where one entity owned the real estate, a second entity owned the home, and a third entity managed the property).

¶ 33    We also note that there are questions of fact as to VVF Illinois' knowledge of the defective storage racks. "[T]here is no liability for a landowner for dangerous or defective conditions on the premises in the absence of the landowner's actual or constructive knowledge." *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1038 (2000). "Generally, if a plaintiff is relying on proof of constructive notice, he or she must establish that the dangerous condition existed for a sufficient time or was so conspicuous that the defendant should have discovered the condition

16

through the exercise of reasonable care." *Racky v. Belfor USA Group, Inc.*, 2017 IL App (1st) 153446, ¶ 100. "Whether a defendant is deemed to have constructive notice of the existence of a dangerous condition on the property is a question of fact." *Racky*, 2017 IL App (1st) 153446, ¶ 100.

¶ 34    In the case at bar, Amrolia testified that he walked through the property prior to its acquisition. Both Amrolia and Konrardy testified that there were no changes made after the acquisition of the property, and Konrardy testified that it was likely that the storage racks remained in the same condition at the time of plaintiff's injury. Thus, there is also a question of fact as to whether VVF Illinois had knowledge of the defective storage racks at the time of the lease, making summary judgment inappropriate on this basis, as well.

¶ 35                                                CONCLUSION

¶ 36    For the reasons set forth above, summary judgment is inappropriate in the case at bar, where numerous questions of fact remain as to the relationship between the various entities involved and to the extent of their responsibility.

¶ 37    Reversed and remanded.

**No. 1-19-0379**

| | |
|---|---|
| **Cite as:** | *Flores v. Westmont Engineering Co.*, 2021 IL App (1st) 190379 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-L-2551; the Hon. Brendan O'Brien, Judge, presiding. |
| **Attorneys for Appellant:** | Matthew A. Saltzman, of Sherwood Law Group, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kurt E. Olsen, of Krakar & Olsen, of Chicago, for appellee. |