2021 IL App (1st) 182568-U

THIRD DIVISION
March 31, 2021

No. 1-18-2568

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| DOOR PROPERTIES, LLC, SERRANI CAROL ANDERSON, MIDWEST BANK TRUST COMPANY, and WILDWOOD, LLC, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| (Door Properties, LLC, Plaintiff-Appellee) | ) ) | 10 L 12931 |
| v. | ) ) | Honorable |
| AYAD M. NAHLAWI, | ) ) | Alexander P. White and Thomas More Donnelly, |
| Defendant-Appellant. | ) | Judges Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justices Fitzgerald Smith and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirmed. Trial court's discovery order was not abuse of discretion. Contempt order and imposition of sanctions was proper.

¶ 2    Defendant Ayad Nahlawi appeals the circuit court's order holding him in indirect civil contempt and fining him $100 a day for failing to respond to a discovery request. He claims the request seeks irrelevant information and is disproportionate. We find no error and affirm.

¶ 3                                    BACKGROUND

¶ 4    This appeal is the latest in the saga of Door Properties's attempt to collect an approximately $750,000 judgment from Nahlawi. See *Door Properties, LLC v. Nahlawi*, 2015 IL

App (1st) 131256-U (affirming judgment), *Door Properties, LLC v. Nahlawi*, 2018 IL App (1st) 180355-U (precursor appeal dismissing present discovery issue for lack of jurisdiction), *Door Properties, LLC v. Nahlawi,* 2020 IL App (1st) 173163 (reversing judgment against third-party citation respondent and remanding for hearing).

¶ 5    Door Properties has alleged throughout its years-long attempts to collect on its judgment that Nahlawi has claimed to be asset-free (and thus judgment-proof) when, in fact, according to Door Properties, Nahlawi has managed to earn a living off the books through his relationships with various entities, many of which are owned by his parents or close friends. See *Nahlawi*, 2020 IL App (1st) 173163, ¶¶ 14-15, 55 (citing one alleged example and remanding for evidentiary hearing to determine extent of relationship between Nahlawi and third-party company).

¶ 6    This particular appeal involves a dispute over discovery, one involving an attempt by Door Properties to discover more about Nahlawi's relationships with these various entities. The procedural background of this discovery dispute is important, so we will attempt to briefly summarize it.

¶ 7    In late 2012, Door Properties obtained a judgment of just over $750,000 against Nahlawi. In 2015, shortly after we affirmed the judgment, Door issued a citation to discover Nahlawi's assets. This citation included a rider requesting additional documents. At issue in this appeal is Request 20. That request sought:

> "Any and all documents, including but not limited to email, correspondence, contracts, notes, minutes, or the like, that refer reflect or relate to Debtor and Foodworks of Arlington Heights, LLC; Foodworks USA, Inc.; Foodworks Hospitality Group, Inc.; Foodworks Holdings, LLC; Foodworks Management Inc.; Foodworks Solutions, Inc.;

Foodworks 2047 LLC; Mago AH, LLC; Mago BB, LLC; Mago SB, LLC; Mago RC, LLC; McCaffrey Interests, Inc.; The Arboretum of South Barrington; Roosevelt Collection; Village of Arlington Heights; Village of South Barrington; Village of Bolingbrook; West Suburban Bank; Kiss the Chef Holdings LLC; Kathy Scheublein."

¶ 8     In June 2015, Nahlawi objected to Request 20, claiming it was "vague, overbroad in time frame and scope, and beyond the stated purpose of a citation to discover assets."

¶ 9     The court initially overruled Nahlawi's objections in their entirety. But in September 2015, the trial court agreed to narrow Request 20 (and other requests contained in the Rider) in terms of time frame "to include a look-back period to 2010." The court then allowed Nahlawi to file amended responses to the narrowed Rider.

¶ 10     In October 2015, instead of responding to Request 20, Nahlawi filed another objection that was nearly identical to his previous one: "Based on the time frame of 2010 to present, [Nahlawi] objects to Paragraph 20 of the Rider as the request is vague, overbroad in scope, and beyond the stated purpose of a citation to discover assets."

¶ 11     In that same month, the court again overruled Nahlawi's objection in a written order, ruling that Door Properties, the judgment creditor, "should be able to discover assets or any interest that might be used to satisfy judgment by serving a citation. * * * The language in [Request 20] clearly and unambiguously seeks to discover debtor's current assets or future interest. The language is neither overbroad nor irrelevant for the purpose of the citation to discover assets."

¶ 12     In November 2015, Nahlawi again moved to reconsider, arguing that the "Court failed to appreciate the sheer magnitude of the information and documents requested that simply 'reflect

or relate' to Nahlawi and 19 separate legal entities and 1 individual identified in Paragraph 20."
He likewise raised, once again, a relevance objection.

¶ 13    Door Properties responded that it believed Nahlawi either owned, managed, or had some business relationship with the entities listed above, and if Nahlawi was receiving compensation from any of those entities, Door Properties was entitled to reach those assets.

¶ 14    That was 2015. Much of the year 2016 was consumed by battles over other requests contained in the Rider.  Nahlawi had answered "none" to several requests, but other documents produced by Nahlawi had demonstrated, in Door Properties's opinion, that those answers were false. Door Properties sought sanctions, which the trial court granted, imposing sanctions against both Nahlawi and his counsel. The court ordered the production of all responsive documents by August 10, 2016.

¶ 15    Nahlawi sought a stay of that order, which the trial court denied in August 2016.

¶ 16    The parties appeared several times on status hearing concerning the various pending motions and other matters concerning the different requests. In January 2017, the court ordered Nahlawi to appear for a preliminary citation examination, which occurred in February 2017.

¶ 17    After the court was advised that Nahlawi had appeared as directed for his preliminary citation examination, the trial court ordered Nahlawi to produce a supplemental response to the citation by March 27, 2017 (that deadline was later continued to May 1 at Nahlawi's request).

¶ 18    In that supplemental response, Nahlawi raised objections again. As to Request 20, he wrote:

> "Despite Defendant's effort to obtain responsive documents to [Request 20] from the
> email server of Foodworks Hospitality Group, Inc. (which hosts Defendant's email
> account, and which provides management services to some of the entities named in the

request), the request for '[a]ny and all documents, including but not limited to email, correspondence, contracts, notes, minutes, or the like, that 'refer reflect or relate to' Defendant and any of the named entities in this request produces too voluminous an amount of documents that could reasonably be expected to be reviewed for privilege or relevance. This email server is an active system maintaining two terabytes of data, and, for the reasons stated above, Plaintiffs' request could include every email sent or received by Defendant (regardless of the email's relevance), and any email referring, reflecting, or relating to Defendant."

¶ 19    Door Properties responded that it believed Nahlawi was really a "silent" owner of these entities, since "Nahlawi further has maintained that he obtains all of his living expenses from his friends and parents, who just so happen to be the owners of the other companies identified in Paragraph 20." As to the objection that the request was "too voluminous," it claimed Nahlawi should "easily" have access to his own emails.

¶ 20    In reply, Nahlawi argued that Request 20 "would include every email Defendant ever sent and received." He continued, "[e]ven if the Court ordered defendant to produce every email he ever sent or received, it would produce such a volume of documents that it would be unworkable and unduly burdensome for Defendant's counsel to review such emails for privilege."

¶ 21    In June 2017, for the second time, the court agreed to narrow Request 20—this time narrowing not the time frame but the scope. The court ordered that the original language of Request 20—a demand for all documents that "refer, reflect, or relate" to the third-party entities—be narrowed to a request for documents that "refer, reflect, or relate to the *relationship*

*between* Debtor and the identified third-parties." (And of course, the time limitation of documents from 2010 and later still applied.)

¶ 22    In November 2017, Nahlawi sought and was granted an extension of time, until December 27, to "answer [the] amended paragraph 20 of the Citation Rider."

¶ 23    Nahlawi did not answer Request 20 on that date. Instead, on that date of December 27, 2017, Nahlawi moved for another extension of time to answer, objected once again exactly as he had previously, and, for the first time, sought a protective order under Illinois Supreme Court Rule 201(c)(3) (eff. July 1, 2014). For the first time, Nahlawi argued that Request 20 lacked proportionality—that is, Request 20 involved a search through emails that was "completely disproportionate to the usefulness of the email production."

¶ 24    During the argument on Nahlawi's motion for protective order, both the Court and counsel for Door Properties expressed exasperation at Nahlawi's continued refusal to respond to Request 20. For example, counsel for Door Properties had this to say:

> "We've already done this. We've already argued this on four separate occasions. And now here we are and they're saying, yet again, we have an objection. I don't know how many bites of the apple they are allowed to get so that they can simply not produce records in response to the citation. We've gone over this time and time again.

> * * *

> Here we are nearly three years after the citation was served, and we're arguing over something that your Honor has decided on multiple occasions. It is absurd to think this judgment debtor can continue, yet again, to voice and reiterate—he says it's the same objection that they have brought the entire time. If that's true, if it's the same objection they brought the entire time, there are four separate orders by your Honor either denying

the objection or then the very last one, which we're referring to from June of last year, specifically limits and modifies the paragraph in response to yet their next objection.

We've been here. We've done that. Produce the records. *** If this guy is unemployed, doesn't receive any income, doesn't receive any benefits, no other perks or anything else, why does all this documentation exist?"

¶ 25 Near the outset of its remarks, the trial court noted that "there is a very definitive procedure. It's been ignored in this case. We have to move it." The court elaborated: "There's a very definitive process in how we proceed with this. Typically, I deal with the objections, the briefing objections, within, at best, 60 days, okay, and we get rid of the objections. Now those objections are gone for whatever reasons brought up by the Court, and now we produce, okay."

¶ 26 The following exchange took place between the court and Nahlawi's counsel:

"THE COURT: There's a limit on how many objections you get. You get them all in at the same time.

[Counsel for Nahlawi]: We did, your Honor.

***

THE COURT: And I ruled.

***

I have ruled on any objections that have been presented to the Court. * * * At that time, what's ever left in the rider that isn't ruled objectionable, then they're produced."

¶ 27 When Nahlawi's counsel tried to explain that the production would be too large and "fill the entire room," the court found those issues were dealing with "materiality and relevance, and I made rulings on that." Counsel then complained: "But we have to then review the documents of

this entire room." To which the court replied: "That's your problem." Counsel immediately responded: "That's 201(c)(3)."

¶ 28    The trial court denied the motion for protective order and ordered that the documents responsive to Request 20 be produced by February 27, 2018.

¶ 29    On February 21, Nahlawi attempted to appeal this interlocutory ruling, but we dismissed the appeal for lack of jurisdiction. See *Nahlawi*, 2018 IL App (1st) 180355-U, ¶ 22 ("As the February 6, 2018 order did not constitute an appealable interlocutory injunction order under Rule 307(a)(1), we lack jurisdiction to consider this appeal and must dismiss it.")

¶ 30    After the case was remanded, the court ordered Nahlawi to comply. Instead, Nahlawi sought "friendly" contempt to challenge the court's denial of his protective order. The court granted the motion in part—the contempt part, but not the friendly part. The court found Nahlawi "to be in indirect civil contempt for his willful failure and refusal to comply with the Court's February 6, 2018 and October 10, 2018 orders compelling the production of documents in response to Citation Rider paragraph 20. A sanction is hereby levied against Ayad Nahlawi in the amount of $100/day until [he] purges the contempt by producing the responsive documents."

¶ 31    Nahlawi timely appeals.

¶ 32                              ANALYSIS

¶ 33    Nahlawi challenges two rulings: the order denying a protective order and the later order to hold him in (less-than-friendly) contempt.

¶ 34    A contempt order is immediately appealable if it imposes a monetary or other penalty. Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). Seeking contempt is the proper procedure for immediately challenging a discovery order. *Klaine v. Southern Illinois Hospital Services*, 2014 IL App (5th) 130356, ¶ 41; *cf. Nahlawi*, 2018 IL App (1st) 180355-U (interlocutory appeal

challenging discovery order as injunction is improper). Our review of contempt necessarily "encompasses a review of the propriety of the underlying order upon which the contempt finding is based." *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 10.

¶ 35                               I. Protective Order

¶ 36    The trial court "may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discover to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." Ill. S. Ct. R. 201(c)(1) (eff. July 1, 2014). Trial courts have wide discretion to determine whether and to what extent a protective order is necessary. *Payne*, 2013 IL App (1st) 113519, ¶ 12; *Willeford v. Toys 'R' Us-Delaware, Inc.*, 385 Ill. App. 3d 265, 272-73 (2008).

¶ 37    We review the grant or denial of a protective order for an abuse of discretion. *Payne*, 2013 IL App (1st) 113519, ¶ 12. A court abuses its discretion when its ruling is so arbitrary or fanciful that " 'no reasonable person would take the view adopted by the trial court.' " *Id.* ¶ 10 (quoting *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23).

¶ 38                                 A. Relevance

¶ 39    Nahlawi first claims that Request 20 seeks information that is irrelevant to the purpose of a citation to discover assets.

¶ 40    Supplementary proceedings pursuant to Section 2-1402 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1402) allow judgment creditors to discover assets or income of the debtor and apply them to the outstanding judgment. *Workforce Solutions v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410, ¶ 39. Within these supplementary proceedings, the only relevant inquiries are: (1) whether the judgment debtor possesses assets which should be applied to satisfy the judgment or (2) whether those assets are in the possession of a third party.

*Schak v. Blom*, 334 Ill. App. 3d 129, 133 (2002). To this end, Section 2-1402 is to be liberally construed. *Id.*

¶ 41    Here, Nahlawi claims that "Request No. 20, in either its original or modified form, does not seek any documents or information concerning whether [Nahlawi] is holding or possesses assets that should be applied to the judgment, and is therefore objectionable and improper." He further states that "Request No. 20 has absolutely nothing to do with Nahlawi's current assets or his future interests in any of the identified entities." That is so, he says, because "[w]hatever Nahlawi's relationship is or was with the identified third-parties has nothing to [do with] discovering his assets."

¶ 42    "Relevant evidence means evidence having *any* tendency to make the existence of a fact in issue more or less probable." (Emphasis in original.) *Shamrock Chicago Corp. v. Wroblewski*, 2019 IL App (1st) 182354, ¶ 35. Relevant, and thus discoverable, information means " 'not only admissible information but also information calculated to lead to the discovery of admissible information.' " *Burdess v. Cottrell, Inc.*, 2020 IL App (5th) 190279, ¶ 68.

¶ 43    Nahlawi takes too narrow a view of relevancy. True, the purpose of a supplementary proceeding is to discover the assets of a judgment debtor. See *Schak*, 334 Ill. App. 3d at 133. But what is relevant to that issue is broader than a laser precision request for a listing of one's assets.

¶ 44    Indeed, Door Properties's stated rationale for this information is that it believes Nahlawi is, in one form or another, receiving compensation from these various entities listed in Request 20 but hiding it. Door Properties has consistently argued that, during the many years it has tried to collect from Nahlawi on its sizeable judgment, Nahlawi has been receiving money from various entities in ways that escape detection—compensation that would not land on a W-2 or 1099 form, but compensation nevertheless.

¶ 45    For example, we recently considered a situation where one of the entities listed in Request 20—a company known as Mago BB, LLC—paid off a debt Nahlawi owed to his lawyer. See *Nahlawi*, 2020 IL App (1st) 173163, ¶¶ 14-15. Door Properties claimed that Mago BB's act in paying off Nahlawi's legal fees was no gratuitous gesture but *compensation* to Nahlawi for work performed—the kind of compensation Door Properties should be entitled to reach in satisfying its judgment. *Id*. We made it clear that if such an arrangement had, in fact, occurred— work performed by Nahlawi in exchange for this indirect compensation—then Door Properties was entitled to collect that indirect monetary payment to help satisfy its judgment against Nahlawi. *Id*. ¶¶ 51, 55. (Ultimately, because no evidentiary hearing had been held, we remanded for such a hearing to determine the truth behind the Nahlawi-Mago BB arrangement. *Id*.)

¶ 46    So it is patently absurd for Nahlawi to claim that Door Properties has no interest in looking deeper into the financial and business relationships between these various entities and Nahlawi, who has remained essentially asset-free (and thus judgment-proof) for over eight years. Request 20 did not seek irrelevant information. The trial court's ruling was entirely correct.

¶ 47                                B. Proportionality

¶ 48    Nahlawi next claims that Request 20 violates the proportionality provision of Illinois Supreme Court Rule 201(c) (eff. July 1, 2014) because "[r]esponding to it would have been incredibly time consuming and cost prohibitive."

¶ 49    We refer to the background section, where we chronicled the long history of this discovery fight. It is clear that on repeated occasions over many years, Nahlawi refused to obey discovery orders issued by the trial court and repeatedly sought reconsideration based on the same grounds previously rejected. And indeed, the trial court showed admirable patience and leniency in narrowing Request 20 not once but twice.

¶ 50　At no time during any of this years-long discovery battle, however, did Nahlawi ever mention a "proportionality" objection. He certainly could have. He repeatedly cited (essentially the same) objections to Request 20, namely vagueness, relevance, and overbreadth. To the extent a claim of disproportionality is different—and it is—Nahlawi had countless opportunities to raise that objection and did not.

¶ 51　The trial court was well within its discretion to say exactly what it did say, in essence: enough was enough. Parties are entitled to raise various objections to discovery requests, but they are not entitled to hold some back until years later—until their fate appears sealed—and then spring them in an attempt to start the fight from scratch. The trial court has the discretion and the right to control its docket and regulate pretrial discovery. *In re Marriage of Faber*, 2016 IL App (2d) 131083, ¶ 13; *Redelmann v. K.A. Steel Chemicals, Inc.,* 377 Ill. App. 3d 971, 976 (2007). If that discretion means anything at all, it includes the right to reject a stalling tactic, via piecemeal objections.

¶ 52　We find no abuse of discretion in the order denying the protective order.

¶ 53　　　　　　　　　　　　　　　II. Contempt

¶ 54　Finally, Nahlawi argues that we should vacate the contempt order—especially the $100 a day fine—because he sought contempt merely to challenge the discovery order. For its part, Door Properties contends, again, that this whole exercise is nothing more than a delay tactic to avoid answering a legitimate discovery request.

¶ 55　When a party seeks contempt "in good faith and was not contemptuous of the circuit court's authority, we may vacate the contempt order even when we find that the circuit court's discovery order was proper." *Klaine*, 2014 IL App (5th) 130356, ¶ 41. The decision to impose

sanctions is committed to the court's sound discretion. *Faber*, 2016 IL App (2d) 131083, ¶ 13; *Redelmann,* 377 Ill. App. 3d at 976–77.

¶ 56    We lack a transcript of any hearing at which the contempt order was issued. That is not a helpful start for Nahlawi in asking us to find that the trial court abused its discretion. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 393-94 (1984) (absent transcript, court could not review denial of motion to vacate for abuse of discretion); *Webster v. Hartman*, 195 Ill. 2d 426, 433–34 (2001) (absent transcript of proceedings, court could not review whether trial court's factual findings for manifest error).

¶ 57    In any event, it is clear from the record and the trial court's order that Nahlawi sought a "friendly" contempt citation, but the trial court was not inclined to make it friendly. The trial court would have been well within its discretion to determine that Nahlawi had engaged in improper delay tactics for years and was using contempt—and an automatic appeal—as yet another way to prolong the inevitable. We have no basis to find that either the order of contempt or the sanctions imposed were improper.

¶ 58                                  CONCLUSION

¶ 59    We affirm the judgment of the circuit court in all respects.

¶ 60    Affirmed.