2023 IL App (1st) 230012

SECOND DIVISION
June 6, 2023

Nos. 1-23-0012 and 1-23-0084 (consolidated)

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DOOR PROPERTIES, LLC; SERANI CAROL ANDERSON; MIDWEST BANK TRUST COMPANY; and WILDWOOD, LLC, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs, | ) ) | |
| v. | ) ) | 10 L 12931 |
| AYAD M. NAHLAWI, | ) ) ) | Honorable |
| Defendant-Appellant | ) ) | Patrick J. Heneghan, Judge Presiding |
| (Door Properties, LLC, Plaintiff-Appellee). | ) | |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment and opinion.

**OPINION**

¶ 1   As our federal colleagues once told another serial contemnor, the first rule of holes is to stop digging. *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 702 (7th Cir. 2014). Ayad Nahlawi would be wise to heed that advice now. When we last saw him, he was in contempt of court and racking up contempt fines by the day. His debts—already sizeable—keep growing ever larger. Yet he continues to flout the commands of the courts of this state.

¶ 2   His most recent misadventure landed him in jail, after the court issued a writ of body attachment with a "cash bond" of $262,000—the sum of his contempt fines up to that point (the

meter is still running). When Nahlawi was detained on a routine traffic stop, the police executed the writ, locking him up in Cook County jail on condition that he pay the $262,000.

¶ 3     He petitioned for emergency relief from this court. Sensing the strong likelihood of error, we ordered him released until we could consider the matter by expedited appeal.

¶ 4     We now vacate the court's order and the writ of body attachment. Though we are sympathetic to the trial court, which inherited this difficult situation and understandably grew impatient with Nahlawi, we nevertheless find that the court erred in locking up Nahlawi on the condition that he pay the contempt fine. But Nahlawi should understand clearly that, under the proper procedure, he could soon face jail again if he continues to refuse to answer the discovery requests that prompted the contempt finding years ago.

¶ 5                                    BACKGROUND

¶ 6     We return to the multi-volume tale that is Door Properties' quest to collect a judgment of approximately $750,000 from Nahlawi. For a comprehensive history of how everyone got here, begin with *Door Properties, LLC v. Nahlawi*, 2015 IL App (1st) 131256-U, which affirmed the underlying judgment. Everything that has happened in this case since our affirmance of the underlying judgment in 2015 has revolved around Door Properties' attempt, via postjudgment supplementary proceedings, to collect its judgment from Nahlawi.

¶ 7     Though Nahlawi has claimed to be penniless, Door Properties has long believed that Nahlawi has been receiving compensation through parents, friends, or other entities to skirt Door Properties' efforts to collect on its judgment. See *Door Properties, LLC v. Nahlawi*, 2021 IL App (1st) 182568-U, ¶ 44. This compensation might not "land on a W-2 or 1099 form" but may qualify as attachable compensation no less. *Id.* To confirm its suspicions, Door Properties has labored to learn more about the nature of these relationships.

Nos. 1-23-0012 and 1-23-0084 (consolidated)

¶ 8     Not long ago, we affirmed a pair of orders holding Nahlawi in contempt of court for refusing to comply with two citation rider requests Door Properties issued, seeking to discover any assets he might have. See *Door Properties*, 2021 IL App (1st) 182568-U; *Door Properties, LLC v. Nahlawi*, 2021 IL App (1st) 190235-U. Nahlawi's failure to comply with these two discovery orders, even after we affirmed the contempt findings, forms the backbone of the present controversy.

¶ 9                                A. The Original Citation Rider

¶ 10    The first of these discovery orders came about after Door Properties issued a citation to discover Nahlawi's assets. Included in that citation was a rider requesting additional documents. Nahlawi objected to one of the requests—Request 20—in that original rider. After narrowing the scope of Request 20 more than once, the court overruled his objection and ordered him to comply with it. Nahlawi did not answer it, more battles ensued, and the case languished for several more years.

¶ 11    But on February 6, 2018, the court reached the end of its rope. It ordered Nahlawi to answer Request 20 of the original citation rider within 21 days or else. He ran to this court, but we dismissed his appeal for a lack of appellate jurisdiction. *Door Properties, LLC v. Nahlawi*, 2018 IL App (1st) 180355-U. Upon remand from our dismissal, on October 15, 2018, the court again ordered Nahlawi to comply with Request 20 of the original citation rider. Nahlawi still refused and instead asked to be held in "friendly contempt." On November 20, 2018, the court granted the contempt part but was not inclined to be friendly about it. Instead, it found Nahlawi to be in indirect civil contempt and imposed a sanction of $100 a day until he purged the contempt by producing the documents in Request 20. Nahlawi appealed, and we affirmed the trial court in all respects. See *Door Properties*, 2021 IL App (1st) 182568-U.

- 3 -

¶ 12                               B. The Supplemental Citation Rider

¶ 13    Meanwhile, Door Properties issued a second, supplemental rider to the original citation

on April 18, 2018, asking for more documents and information. Nahlawi objected to the entirety

of the supplemental rider, but on November 20, 2018 (the same day it held him in contempt for

failing to comply with Request 20), the court overruled all his objections. It ordered him to

respond to the supplemental rider by December 4, 2018.

¶ 14    On December 12, Nahlawi (having not responded to the supplemental rider), asked the

court to hold him in "friendly contempt." Again, the court was happy to hold him in contempt

but not to be friendly about it. It found him in indirect civil contempt for willfully failing to

respond to the supplemental rider. Nahlawi appealed, and we affirmed, presuming the circuit

court's decision was proper because we did not have an adequate record to review. *Door

Properties*, 2021 IL App (1st) 190235-U.

¶ 15                               C. Contempt Proceedings Post-Remand

¶ 16    With those cases finished, Nahlawi was in contempt of two orders: (1) the October 15,

2018, order requiring him to comply with Request 20 of the original citation rider and (2) the

November 20, 2018, order that required him to comply with the supplemental citation rider. (For

brevity, we will refer to them as the "discovery orders.") Yet Nahlawi still refused to yield.

¶ 17    To perhaps prod Nahlawi yet again, Door Properties filed a "Petition to Set Purge" in the

circuit court on January 18, 2022. In that petition, Door Properties noted that Nahlawi had

exhausted his appeals of the contempt findings and had not yet produced any records as required

by the discovery orders. It then asked the trial court to set a "purge amount and a purge

deadline."

¶ 18    The court gave Nahlawi an opportunity to respond to the petition to set a purge, but

(perhaps unsurprisingly) he did not. In a written order entered on July 5, 2022, the court granted Door Properties' petition. After reciting much of the tortured history of the case, the court concluded that Nahlawi had not produced any documents in response to the citation riders, that he had not "purged himself of the contempt," and that there was no just reason to delay setting a "purge amount" on the sanctions. It calculated that Nahlawi had been in contempt for a total of 2,620 days and, at a penalty of $100 per day, had accumulated a monetary sanction of $262,000 in contempt fines.

¶ 19    The court then issued a "writ of body attachment" against Nahlawi "for his indirect civil contempt with Cash Bail set in the amount of $262,000 to be paid to the Clerk of the Circuit Court of Cook County, Illinois." The court stayed the writ for 45 days, until August 19, 2022, to allow Nahlawi to pay the $262,000 sanction. But if Nahlawi did not pay, the court ordered the writ given to the Cook County Sheriff for enforcement. Last, the court reminded Nahlawi he still had to respond to the citation riders and that, every day he failed to do so, his fines increased.

¶ 20    Nahlawi filed a motion to reconsider in August. In that motion, Nahlawi argued that he could not comply with the monetary sanction because he was without any assets, "certainly any assets sufficient to pay a sanction of $262,000." Nahlawi argued that, since he was unable to pay the sanction, the court should reduce or vacate the sanction, since it would have no coercive effect on him. He also claimed he was working to reply to Request 20 of the original citation rider and requested additional time to do so.

¶ 21    On December 20, 2022, the court denied Nahlawi's motion to reconsider. In an 11-page order, the court wrote that "Nahlawi's total defiance and unwillingness to comply with his obligations *** has operated to paralyze, if not completely eviscerate, this Court's efforts to effectively and timely manage these citation proceedings." It blasted Nahlawi's "contemptuous

conduct" for delaying the collection of the judgment and the harm it caused the plaintiffs in the case. The court was unmoved by Nahlawi's argument that he was unable to pay the sanction, calling his claim that he was a pauper, without evidence, an "absurd argument." The court then stayed the writ of body attachment until January 4, 2023, with orders it be given to the sheriff if Nahlawi had not paid the "purge sum" of $262,000 at that time. Nahlawi filed a notice of appeal in this court shortly thereafter.

¶ 22    On February 16, 2023, Nahlawi was stopped by police in a routine traffic stop. Pursuant to the writ of body attachment, police took him into custody. Nahlawi was remanded to the Cook County Jail until and unless he posted the $262,000 "cash bond."

¶ 23    Nahlawi filed an emergency motion in this court on February 21, 2023, requesting we stay enforcement of the writ of body attachment and order Nahlawi released pending his appeal from the July 5 and December 20 orders. We granted that motion and ordered expedited briefing.

¶ 24                                    ANALYSIS

¶ 25    Nahlawi challenges the July 5 order and the writ of body attachment issued here. On review, we will invalidate a contempt judgment only when the court has abused its discretion. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 25. An abuse of discretion occurs when no reasonable person would take the view of the circuit court or when the court commits an error of law. *Id.*; *Campbell v. Autenrieb*, 2018 IL App (5th) 170148, ¶ 26**.**

¶ 26    The inherent power of courts to compel compliance with their orders is vital to the administration of justice. *Sanders v. Shepard*, 163 Ill. 2d 534, 540 (1994). And this case may be a prime example of why a court must have the power to wield the cudgel of contempt. Nahlawi has flouted multiple orders, making what should be a very simple and straightforward process needlessly complicated. Courts must be independently vested with power to impose silence,

respect, and decorum in their presence and submission to their lawful mandates. *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831 (1994). Courts have thus embraced an inherent contempt authority as a necessity to ensure they can enforce their other powers. *Id.*

¶ 27    Yet the power of contempt is also uniquely susceptible to abuse. *Ex parte Terry*, 128 U.S. 289, 309 (1888). Unlike other areas of the law, where the legislature defines both the sanctionable conduct and the penalty for it, civil contempt proceedings are helmed by the offended judge, who is solely responsible for "identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Bagwell*, 512 U.S. at 831. While this case is a fine example of the necessity of contempt powers, it also highlights the peril a court faces when wielding it.

¶ 28                                          I

¶ 29    Nahlawi claims the court imposed an improper "purge" when it made his release from custody contingent on payment of $262,000 in contempt fines, rather than conditioned on him answering the citation riders. We agree that is where the problem lies.

¶ 30    Civil contempt is remedial in nature, intended to benefit the complainant by coercing obedience with a court order. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911). Because of its coercive purpose, the sanction or penalty must be designed to compel future compliance with the court's commands. *Felzak v. Hruby*, 226 Ill. 2d 382, 391 (2007); see *In re Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 58.

¶ 31    The ability of the contemnor to "purge" the contempt through compliance with the underlying court order is thus an indispensable ingredient of any civil contempt. *Felzak*, 226 Ill. 2d at 391; *In re Marriage of Betts*, 200 Ill. App. 3d 26, 44 (1990) ("The contemnor must be

capable of taking the action sought to be coerced \*\*\*."). Simply stated, " 'A valid contempt order must contain a purge provision, which lifts the sanction when the contemnor complies with the order. [Citation.] A civil contempt order that fails to provide the contemnor with the "keys to his cell" is void.' " *Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 58 (quoting *Bank of America, N.A. v. Freed*, 2012 IL App (1st) 113178, ¶ 42).

¶ 32 The court's original contempt orders imposed daily fines of $100 until Nahlawi complied with the discovery orders and produced documents responsive to the citation riders. They were proper uses of civil contempt power, with a proper purge provision—compliance with the court's discovery orders—which is one of the many reasons we affirmed them. *Door Properties*, 2021 IL App (1st) 182568-U, ¶ 57; *Door Properties*, 2021 IL App (1st) 190235-U, ¶ 12.

¶ 33 The July 5 order at issue here, however, sent Nahlawi to jail *not* until he complied with the discovery orders—but until he paid $262,000 in accumulated contempt fines. The purge, in other words, was not compliance with the original discovery orders but payment of a fine that, to date, he had accrued for noncompliance with those orders.

¶ 34 That was error. A civil contemnor "purges" himself of contempt by finally doing what the original order told him to do—in this case, to comply with the discovery requests. *Felzak*, 226 Ill. 2d at 391; *Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 26. That is why, when we discuss civil contempt, we often refer to the contemnor as holding the "key" to his own "jail cell"—the contemnor has the unilateral power to purge his contempt by complying with the original court order. See *Gompers*, 221 U.S. at 442.

¶ 35 Coercing Nahlawi to pay the fine would not and could not purge Nahlawi of his original contemptuous behavior—refusal to comply with the discovery orders. Had Nahlawi somehow managed to cough up $262,000, he would be purged from *incarceration*, to be sure—but he

would not have purged his original contempt for refusing to answer the citation riders; he would still be in violation of the original discovery orders. Conversely, had Nahlawi finally complied with the discovery orders and produced documents responsive to the citation riders, thereby purging his contempt, he still would remain locked up—until he paid the $262,000 cash bond.

¶ 36     By tying Nahlawi's continued detention to payment of the contempt fines, rather than to compliance with the discovery orders, the court decoupled the original purpose of the civil contempt from the measure originally used to coerce compliance. The focus shifted from complying with discovery to paying the fine for not complying. Absent a valid purge provision, the July 5 order and its accompanying writ of body attachment cannot stand. *Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 58.

¶ 37                                                    II

¶ 38     A civil contempt order with an improper purge provision can often be described by another name—a *purported* civil contempt order that, because of its improper purge provision, has unintentionally morphed into an order of *criminal* contempt. See, *e.g.*, *Penfield Co. of California v. Security & Exchange Comm'n*, 330 U.S. 585, 592-93 (1947). And that, quite arguably, is what happened here—the July 5 order, in substance, became an order of indirect criminal contempt.

¶ 39     We have consistently recognized that the two forms of contempt may overlap and share characteristics with one another. See *Marriage of Betts*, 200 Ill. App. 3d at 43 ("The distinctions between the various categories of contempt *** have not always been clearly drawn."). Clearly, neither the court nor the parties considered the sanctions here to be criminal in nature, but the court's "subjective intent" is not dispositive; the character of the relief in the order controls. *Bagwell*, 512 U.S. at 828.

¶ 40    While a civil contempt is coercive in nature, designed to benefit the aggrieved party by coercing compliance with a court order, criminal contempt is punitive and is imposed "to vindicate the authority of the court." *Gompers*, 221 U.S. at 441. Criminal contempt is retrospective in that it seeks to "punish a contemnor for past acts that he cannot now undo." (Internal quotation marks omitted.) *Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 59.

¶ 41    Coercing Nahlawi to pay the accumulated fines via imprisonment could arguably fall within the realm of indirect criminal contempt. One could view the July 5 order as the court vindicating its authority and dignity by compelling payment of the fines it had imposed—a hallmark of criminal contempt. See *Gompers*, 221 U.S. at 441. And forcing Nahlawi to pay an enormous fine certainly did not benefit Door Properties in any way; the money would go to the county treasury, not Door Properties. See *Keuper v. Beechen, Dill & Sperling Builders, Inc.*, 301 Ill. App. 3d 667, 669 (1998) ("[i]n Illinois, it is well established that civil contempt is an affront to the authority of the court and not a private remedy," and "any fine imposed pursuant to the contempt is payable to the public treasury and not a plaintiff").

¶ 42    Compelling payment of a fixed fine, rather than compliance with the discovery orders, would also stray from coercing future behavior and fall more comfortably into the realm of punishing Nahlawi for past acts he could not undo—payment of fines he had accrued to date. See *Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 59.

¶ 43    We would add that it seems almost inescapably clear that these fines had reached an amount so high that Nahlawi could not possibly afford to pay, further suggesting that they had become punitive in nature. See *Sanders*, 163 Ill. 2d at 540-41 (" 'When it becomes obvious that sanctions are not going to compel compliance, they lose their remedial characteristics and take

on more of the nature of punishment.' " (quoting *Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31 (2d Cir. 1981)).

¶ 44     A good example of why the July 5 order and writ of body attachment could be characterized as criminal contempt is the decision of *Penfield*, 330 U.S. 585. There, the district court held a corporate officer named Young in contempt for refusing to produce certain corporate documents. *Id.* at 587-88. The court imposed a determinate fine of $50 and ordered Young incarcerated until he paid it. *Id.* at 588; see also *id.* at 588 n.3.

¶ 45     The court of appeals reversed, finding that these sanctions were criminal in nature, not civil, because the fine was determinate, not conditional, and the incarceration did not coerce compliance with the original order to produce documents. *Id.* at 589. In its place, the court of appeals changed the remedy to one it considered coercive in nature and thus appropriate for civil contempt—that the fine be vacated and that Young be incarcerated *until he produced the documents* he had been ordered to produce. *Id.*

¶ 46     The Supreme Court agreed with the court of appeals in full:

> "When the Circuit Court of Appeals substituted imprisonment for the fine, it put a civil remedy in the place of a criminal punishment. For the imprisonment authorized would be suffered only if the documents were not produced or would continue only so long as Young was recalcitrant. On the other hand, the fine imposed by the District Court *** was unconditional and not relief of a coercive nature such as the Commission sought. It was solely and exclusively punitive in character." *Id.* at 592-93.

¶ 47     The July 5 order here and the district court's order in *Penfield* are quite similar. While the fine imposed by the circuit court here was initially coercive in nature—$100 a day for noncompliance with the discovery orders—it arguably morphed into a punitive sanction when

the court wrapped the ongoing fines into a fixed sum and ordered Nahlawi (like the contemnor in *Penfield*) jailed until he paid that sum.

¶ 48    If, in fact, the July 5 order thus constituted an order of indirect criminal contempt, we would still be compelled to vacate. Unlike indirect civil contempt, which requires only minimal due process protections like notice and an opportunity to be heard (*Marriage of Betts*, 200 Ill. App. 3d at 53), indirect criminal contempt is a criminal proceeding that must be accompanied by the full panoply of rights afforded criminal defendants (*Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 59).

¶ 49    We will not list all of them here, but they include the rights to trial, to counsel, to call and confront witnesses, to compulsory process, to avoid self-incrimination, and to proof beyond a reasonable doubt. *Id.*; *Marriage of Betts*, 200 Ill. App. 3d at 58-59. Notably, they also include the right to be informed *in advance* that the proceedings are criminal in nature, so the contemnor may avail himself of this full menu of rights. *Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 59; *In re J.L.D.*, 178 Ill. App. 3d 1025, 1031 (1989).

¶ 50    Nothing like that happened here. At no time was Nahlawi informed that he was facing criminal contempt. Neither the court nor the parties considered the proceeding to be criminal in nature. Indeed, the July 5 order was not even preceded by a fresh rule to show cause—it was prompted by Door Properties' "petition to set a purge" for the civil contempt order previously entered. So in the event that the July 5 order and its accompanying writ of body attachment could be construed as an order of indirect criminal contempt, we would be compelled to vacate it, too.

¶ 51                                    III

¶ 52    We briefly address Door Properties' argument that Nahlawi forfeited any challenge to the July 5 order granting its "Petition to Set Purge" because he did not offer a response to it at the

time (only seeking reconsideration after the fact). The primary purpose of the forfeiture rule is to ensure the trial court has an opportunity to correct a purported error, and it cannot correct that error if no objection is made. *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 350 (2009).

¶ 53 But the rule is not rigid and inflexible. *Daley v. License Appeal Comm'n of Chicago*, 311 Ill. App. 3d 194, 200 (1999). We may look beyond forfeiture when the interests of justice require. *U.S. Bank National Ass'n v. Rose*, 2014 IL App (3d) 130356, ¶ 24. While we do not condone Nahlawi's habit of ignoring court orders and filing deadlines, the forfeiture rule must yield when the court confronts the possibility that a person has been wrongly and indefinitely deprived of his freedom. Forfeiture is not a bar to our review.

¶ 54                                             IV

¶ 55 By no means are we suggesting that the court lacks the authority to enforce a civil contempt order by way of imprisonment. It is well established that incarceration is an appropriate sanction for civil contempt to coerce the contemnor's compliance with a court order. See, *e.g.*, *Hicks v. Feiock*, 485 U.S. 624, 632 (1988) (imprisonment is appropriate as civil contempt sanction if " 'the defendant stands committed unless and until he performs the affirmative act required by the court's order' " (quoting *Gompers*, 221 U.S. at 442)); *Sanders*, 163 Ill. 2d at 540; *Wilson v. Prochnow*, 359 Ill. 148, 151 (1934) ("If imprisonment is ordered, it is not as a punishment but to the end that the other party to the suit may obtain a remedy for the advancement of his own private interests and rights which he could not otherwise procure.").

¶ 56 The only requirement, as we have noted, is that the civil contemnor must "hold[ ] in his own pocket the key to his jail cell," so that "he may win his release at any time by complying with the order of the court." *Sanders*, 163 Ill. 2d at 540; see *In re Marriage of Logston*, 103 Ill. 2d 266, 289 (1984) ("Since the contempt order is coercive rather than punitive, the civil

contemnor must be provided with the 'keys to his cell.' That is, he must be allowed to purge himself of contempt even after he has been imprisoned."). Here, that means that Nahlawi must be able to earn his release from custody by complying with the discovery orders issued by the court—answering the citation riders and turning over the relevant documents and discovery.

¶ 57    So it would be well within the circuit court's discretion to determine, after all this time and the vast accumulation of fines, that the daily fines had lost their coercive effect and vacate them. See *Sanders*, 163 Ill. 2d at 540-41. And on motion of Door Properties or on its own motion to consider an alternative sanction for Nahlawi's civil contempt, after notice and an opportunity to be heard, the court could opt to impose the coercive sanction of imprisonment to compel compliance with the discovery orders. See *id.* at 538; *Marriage of Betts*, 200 Ill. App. 3d at 46.

¶ 58    If the court, after that hearing, were inclined to detain Nahlawi as a coercive sanction, the court could do so indefinitely so long as the court (1) provides Nahlawi the ability to purge his contempt at any time by complying with the discovery orders and (2) reviews the matter regularly to ensure that incarceration retains a coercive effect. See, *e.g.*, *Sanders*, 163 Ill. 2d at 541-45 (supreme court affirmed continued confinement, 3½ years and counting, of civil contemnor who refused to obey court order and reveal whereabouts of his missing daughter because court reviewed detention every six months to determine if imprisonment retained coercive effect); see also *id.* at 545 ("There was sufficient evidence from which the circuit judge could find that the sanction continued to have a coercive effect.").

¶ 59                                            CONCLUSION

¶ 60    The July 5, 2022 judgment order and accompanying writ of body attachment are vacated.

¶ 61    Vacated.

- 14 -

*Door Properties, LLC v. Nahlawi*, **2023 IL App (1st) 230012**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10-L-12931; the Hon. Patrick J. Heneghan, Judge, presiding. |
| **Attorneys for Appellant:** | Kevin S. Besetzny, of Besetzny Law P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kevin K. McCormick, of DeWald Law Group PC, of Arlington Heights, for appellee. |