2024 IL App (1st) 232124

FIRST DISTRICT
THIRD DIVISION
September 25, 2024

No. 1-23-2124

| | | |
|---|---|---|
| TIMOTHY GIBBONS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 09 L 3335 |
| | ) | |
| CHAD KOWAL, | ) | Honorable |
| | ) | James E. Hanlon, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Martin and D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    After Chad Kowal (Chad) did not repay a loan provided by Timothy Gibbons (Gibbons), Gibbons filed a complaint in the circuit court of Cook County and secured a default judgment against Chad. Chad failed to comply with a citation to discover assets or to appear at a hearing on a rule to show cause for such failure, and the circuit court held him in contempt. The contempt order included a writ of body attachment—directing the sheriff to arrest Chad and bring him to the circuit court—and provided that the sheriff was authorized to release Chad upon the execution of a $25,000 cash bond. Chad was eventually arrested, and his father, James Kowal (James), posted the bond to secure Chad's release from custody. Chad subsequently sought the return of the $25,000 amount to his father; Gibbons pursued the same funds to partially satisfy his unpaid default judgment against Chad. In this appeal, Chad challenges an order of the circuit court granting the motion for turnover presented by Gibbons and denying Chad's petition for release of the bail bond. For the reasons discussed below, we reverse the

judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3                        *The Loan and the Initiation of Litigation*

¶ 4      Gibbons advanced $50,000 for "business purposes" to Chad and another individual, Robert Keleghan (Keleghan), in December 2006.  Chad and Keleghan executed a promissory note wherein they agreed to pay $54,167 to Gibbons, representing the principal and interest, on or before May 28, 2007.  After paying the interest but not the principal, Chad and Keleghan executed new promissory notes in late May and then August 2007, wherein they agreed to pay additional amounts, plus potential late charges and attorney fees.

¶ 5      Chad and Keleghan failed to make the payments required by the August 2007 note, and Gibbons sent a notice of default in February 2009.  Gibbons then filed a verified complaint for damages against Chad (but not Keleghan) in the circuit court of Cook County, seeking $77,840.40, representing principal plus accrued interest and late fees, as well as attorney fees.

¶ 6                        *Default Judgment and Collection Efforts*

¶ 7      Following Chad's failure to appear or answer, Gibbons filed a motion for default judgment.  The record suggests that Chad subsequently attended a hearing and was granted time to retain counsel.  After multiple continuances, Gibbons filed a second motion for default judgment in 2010, arguing that Chad still had not filed an appearance or an answer.  On August 18, 2010, the circuit court granted the motion and entered a judgment in favor of Gibbons and against Chad in the amount of $108,425.03.

¶ 8      More than four years later, Gibbons (as judgment creditor) filed a citation notice against Chad (as judgment debtor), and Chad was served with an alias citation to discover assets. After Chad failed to comply with the citation, the circuit court issued a rule to show cause as to

why he should not be held in contempt of court. Chad failed to appear at the hearing, and the circuit court entered an order on July 6, 2015, providing that (a) Chad was held in contempt of court, (b) a writ of body attachment was issued against him, and (c) the sheriff was authorized to release him on $25,000 cash bond.

¶ 9     The record suggests that Gibbons continued his collection efforts by serving citations to discover assets on Chad and various third parties, but Chad was not taken into custody. After Chad again failed to appear in court, the circuit court entered another order on August 15, 2016, which held him in contempt, issued a writ of body attachment against him, and provided for his release on a $25,000 cash bond.

¶ 10                            *2017 Developments*

¶ 11     Chad—a resident of DuPage County—was arrested by the DuPage County Sheriff in 2017, and James (Chad's father) posted a bail bond in the amount of $25,000 to secure his release from custody. By signing the bail bond, James acknowledged "that the bail may be used to pay the defendant's attorney's fees, fines, costs, fees, restitution or other purposes authorized by the court" and that James could lose all or part of his money. Although the photocopy in the record is unclear, Chad apparently signed the bail bond as well. Shortly thereafter, an attorney filed an appearance in the Cook County matter on behalf of Chad.

¶ 12     Gibbons issued a third-party citation to discover assets to the DuPage County Sheriff in July 2017. Gibbons then filed a motion for a turnover order against the sheriff pursuant to section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2016)), seeking turnover of the $25,000 cash bond in partial satisfaction of Gibbons' judgment against Chad. Gibbons subsequently filed citations to discover assets directed to the DuPage County circuit court (to the attention of the "Circuit Clerk") and the Cook County circuit court (to the attention

of the "Bond Refund Department").

¶ 13    The circuit court of Cook County then entered orders in August 2017 dismissing the DuPage County respondents, since the $25,000 amount had already presumably been transferred to the clerk of the circuit court of Cook County. The case was moved to the circuit court's stay calendar, apparently based on a bankruptcy case initiated by or against Chad. Shortly thereafter, the circuit court granted Gibbons' petition to revive the default judgment entered on August 18, 2010, which had become dormant by operation of law after seven years (see 735 ILCS 5/12-108 (West 2016)). With the addition of post-judgment interest and costs, the balance owed by Chad to Gibbons as of August 28, 2017, was $177,680.90.

¶ 14    The appellate record suggests that Chad's bankruptcy case was dismissed without a discharge, *i.e.*, he continued to owe the unpaid judgment to Gibbons.

¶ 15                              *2022 and 2023 Proceedings*

¶ 16    Based on our review of the record, nothing appears to have happened vis-à-vis the $25,000 bail amount in the ensuing years until Chad's counsel and James communicated with employees of the circuit court of Cook County in 2022, seeking a refund. As instructed by the clerk's office, Chad filed a petition for release of the bail bond on December 14, 2022. Chad sought an order directing the circuit court to issue $25,000 either to him or James, in its discretion. Gibbons subsequently filed a motion for turnover pursuant to section 2-1402 of the Code of Civil Procedure, seeking an order directing the circuit court clerk to release the bail bond to him instead of Chad or James.

¶ 17    Chad then filed an amended petition for release of the bail bond, requesting an order directing the circuit court clerk to issue a refund for the bail bond in the amount of $25,000 to James (*i.e.*, not to Chad). In his response, Gibbons argued that section 110-7.5 of the Code of

Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/110-7.5 (West 2022)) mandates that the clerk can release the funds only "[w]hen the conditions of the previously posted bail bond have been performed and the accused has been discharged from all obligations in the cause." Gibbons maintained that section 110-7.5 requires that the $25,000 bail amount be applied to the outstanding judgment, which exceeded $177,000. Gibbons further argued that the bail bond signed by James expressly provided that his money might not be returned.

¶ 18 In his response to Gibbons' motion for turnover, Chad argued that (a) all the funds were paid by James, (b) the purpose of bail is to secure a defendant's presence at trial, not to punish the defendant, (c) Chad appeared in court and "otherwise honored all of the requirements of the bail," and (d) he was not criminally convicted and was not ordered to pay any restitution. While Chad acknowledged that bail funds may be used in "rare circumstances" to satisfy a civil judgment, he argued that such result rests on the proposition that the bail funds were the defendant's property and were thus attachable as his assets. As Chad provided evidence (*i.e.*, bank records) that the bail money came exclusively from his father, Chad maintained that the seizure of such amounts by Gibbons violated equitable and due process principles.

¶ 19 On June 7, 2023, the circuit court entered an order denying Chad's amended petition for release of the bail bond. The circuit court granted Gibbons' motion for turnover, reasoning that since Chad signed the bail bond, the $25,000 bail amount constituted "property belonging to the judgment debtor" under section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2022)) and *National Life Real Estate Holdings, LLC v. Scarlato*, 2017 IL App (1st) 161943 (*Scarlato*). The circuit court directed the court clerk to release the funds to Gibbons. Over Gibbons' objection, the circuit court granted an emergency motion filed by Chad and

stayed the order of June 7, 2023, for 28 days.

¶ 20    Chad filed a motion to reconsider, contending that neither *Scarlato* nor section 2-1402 compelled the turnover of the $25,000 amount.  Gibbons responded, in part, that section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2022)) and section 110-7.5 of the Code of Criminal Procedure (725 ILCS 5/110-7.5 (West 2022)) provide courts with discretion to satisfy judgments by compelling compliance by judgment debtors and other cited parties. Gibbons also maintained that Chad's signature on the bail bond evidenced his "signing power" with respect to the funds.

¶ 21    On October 10, 2023, the circuit court entered a memorandum opinion and order denying Chad's motion for reconsideration.  The circuit court observed that James did not intervene in the bond proceedings or otherwise assert that he was an adverse claimant.  According to the circuit court, the fact that Chad (not James) filed the petition for release was evidence of Chad's belief that he owned the funds.  The circuit court further noted that the bail bond provided that the funds would be paid to Chad or to the person he designated, which the court considered the "hallmark of funds that belong to a judgment debtor."  Based on the circuit court's determination that the bond proceeds belonged to Chad, the circuit court concluded that those funds were available for turnover to Gibbons as the judgment creditor.

¶ 22    Chad timely filed this appeal.

¶ 23                              ANALYSIS

¶ 24    The parties fundamentally disagree regarding the nature and availability of the $25,000 bail amount.  Chad maintains that the funds belong to James and should be returned to him. Gibbons asserts—and the circuit court agreed—that the bail amount constitutes "property belonging to the judgment debtor" (*i.e.*, Chad) under section 2-1402 of the Code of Civil

Procedure (735 ILCS 5/2-1402 (West 2022)) and *Scarlato*, 2017 IL App (1st) 161943, and therefore the funds could be applied to Chad's longstanding debt owed to Gibbons. As the circuit court ruled on this issue as a question of law and did not make factual findings, our review is *de novo*. *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 32. Accord *Doe v. Illinois Department of Professional Regulation*, 341 Ill. App. 3d 1053, 1060 (2003). "*De novo* review means that we perform the same analysis a trial court would perform." *Watson v. Legacy Healthcare Financial Services, LLC*, 2021 IL App (1st) 210279, ¶ 29.

¶ 25    As discussed below, we find that a statutory provision which was not cited by the parties—735 ILCS 5/12-107.5 (West 2022)—provides the most appropriate framework for our analysis. We begin, however, by briefly addressing the parties' contentions.

¶ 26                                    *The Parties' Arguments*

¶ 27    Section 2-1402 provides a mechanism for a judgment creditor to initiate supplementary proceedings to discover the assets of a judgment debtor or third party and apply those assets to satisfy the judgment. *Schak v. Blom*, 334 Ill. App. 3d 129, 132-33 (2002); 735 ILCS 5/2-1402 (West 2022). "Before a judgment creditor may proceed against a third party who is not the judgment debtor, the record must contain some evidence that the third party possesses assets of the judgment debtor." *Schak*, 334 Ill. App. 3d at 133. Citing *Scarlato*, 2017 IL App (1st) 161943, the circuit court in this case found that Chad's signature on the bail bond evidenced that the bail amount belonged to him and was thus available to satisfy his debt to Gibbons.

¶ 28    In *Scarlato*, the judgment creditor secured a $3.5 million judgment against Ronald Scarlato (Scarlato) and subsequently issued a citation to discover assets to Scarlato's bank. *Id.* ¶¶ 1, 3. Four months after being served with the citation, the bank advanced and disbursed the proceeds of a loan to third parties on behalf of Scarlato. *Id.* ¶ 6. The appellate court found

that the bank's conduct violated section 2-1402(f) of the Code of Civil Procedure, which provides that a citation may prohibit the transfer or disposition of property belonging to the judgment debtor. *Id.* ¶ 39; 735 ILCS 5/2-1402(f)(1) (West 2012). In reaching this decision, the appellate court found that Scarlato's signatures on the loan documents "evidence[d] his control over the loan proceeds." *Scarlato*, 2017 IL App (1st) 161943, ¶ 36.

¶ 29    Chad contends, in part, that there is no dispute that the bail funds were property of James, and thus any court-mandated turnover of the funds to Gibbons would be improper. See *e.g.*, 735 ILCS 5/2-1402(c)(1) (West 2022) (providing that the court may compel the judgment debtor to deliver up assets to satisfy the judgment where "his or her title or right of possession is not substantially disputed"). Gibbons asserts that Chad's signature on the bail bond is akin to Scarlato's signature on the loan documents, *i.e.*, Chad's signature evidenced that the bond funds were his property. For multiple reasons, we reject Gibbons' assertion. The bail bond signed by both James and Chad made clear that the "person providing bail money" was an individual "other than the defendant." Unlike Scarlato, there is no indication that Chad could have used the $25,000 for his own purposes. See *Scarlato*, 2017 IL App (1st) 161943, ¶ 36 (observing that "[a]rguably, Scarlato could have used the loan proceeds for his own personal use" or for other payments). Furthermore, the refusal of the circuit court clerk to release the $25,000 absent a court order belies the contention that Chad had "control" (*id.*) over those funds.

¶ 30    Gibbons also relies on a recently enacted provision of article 110 of the Code of Criminal Procedure (commonly known as the Pretrial Fairness Act): 725 ILCS 5/110-7.5 (West 2022). When the legislature abolished monetary bail in criminal cases through the Pretrial Fairness Act, "it anticipated that there would be confusion about how to apply the new pretrial-release provisions to pending cases where the court had already set a monetary bond." *People v.*

*Haisley*, 2024 IL App (1st) 232163, ¶ 18. Section 110-7.5 was enacted to address the transition of defendants from the prior cash-bail system to the new system of pretrial release. *Id.*[1] Contrary to Gibbons' contention, there is no indication in the statutory language or in the relevant case law that this section applies to an individual subject to a body attachment order in a civil proceeding. See *e.g.*, 725 ILCS 5/110-2(a) (West 2022) (providing that "[a]ll persons charged with an offense shall be eligible for pretrial release before conviction"). As discussed below, a different provision of the Code of Civil Procedure which specifically addresses body attachment orders appears to apply to the circumstances at issue herein.

¶ 31                              *Body Attachment Orders*

¶ 32    Chad was arrested pursuant to an order of the circuit court which found him in contempt and issued a writ of body attachment against him. Section 12-107.5 of the Code of Civil Procedure specifies procedures and due process protections in connection with the issuance of a body attachment order. 735 ILCS 5/12-107.5 (West 2022). For example, the statute provides that "[n]o order of body attachment or other civil order for the incarceration or detention of a natural person respondent to answer for a charge of indirect civil contempt shall issue unless the respondent has first had an opportunity *** to appear in court to show cause why the respondent should not be held in contempt." *Id.* § 12-107.5(a).[2]

---

[1] Gibbons highlights two subsections: (a) section 110-7.5(c)(4), which provides, in part, that when the conditions of the previously-posted bail bond have been performed "and the accused has been discharged from all obligations," the court clerk must return the bail amount, less bail bond costs; and (b) section 110-7.5(c)(7), which states that "[a]fter a judgment for a fine and court costs or either is entered in the prosecution of a cause in which a deposit of security was previously made, the balance of such deposit shall be applied to the payment of the judgment." 725 ILCS 5/110-7.5(c)(4), (c)(7) (West 2022).

[2] To the extent that section 12-107.5 may apply to orders based solely on charges of indirect civil contempt, the parties acknowledged during oral argument before this Court that Chad was held to be in indirect civil contempt, even though the order did not expressly so provide. See *Door Properties, LLC v. Nahlawi*, 2023 IL App (1st) 230012, ¶ 30 (observing that "[c]ivil contempt is remedial in nature, intended to benefit the complainant by coercing obedience with a court order"); *Milton v. Therra*, 2018 IL App

¶ 33    While the statute does not prohibit the application of the bond proceeds to the contemnor's debt, it requires the court to make certain determinations prior to such turnover:

> "Upon discharge of any bond secured by the posting of funds, the funds shall be returned to the respondent or other party posting the bond, less applicable fees, unless the court after inquiry determines that: (1) the judgment debtor willfully has refused to comply with a payment order entered in accordance with Section 2-1402 or any otherwise validly entered order; (2) the bond money belongs to the debtor as opposed to a third party; and (3) that any part of the funds constitute non-exempt funds of the judgment debtor, in which case the court may cause the non-exempt portion of the funds to be paid over to the judgment creditor." *Id.* § 12-107.5(e).

In this case, the $25,000 bond money did not "belong" to Chad (the "debtor"); the money belonged to James (a "third party"). See, *e.g.*, *Root v. Carter*, 2021 IL App (4th) 200157, ¶ 21 (stating that "the bond money did not belong to the [alleged contemnor] but rather to *** the family member who posted the funds"). Based on the language of section 12-107.5(e) of the Code of Civil Procedure, the circuit court should not have ordered the turnover of the funds to Gibbons.

¶ 34                                      CONCLUSION

¶ 35    We recognize that our decision may be frustrating to Gibbons, who has been owed a sizable debt by Chad for at least 15 years. Despite the unfortunate circumstances for Gibbons, we simply cannot designate James as an unwitting partial guarantor of his son's indebtedness.

---

(1st) 171392, ¶ 37 (noting that the issuance of a rule to show cause is appropriate only in civil contempt); *Windy City Limousine Company LLC v. Milazzo*, 2018 IL App (1st) 162827, ¶ 40 (providing that "an indirect contempt charge is brought when the alleged contemptuous conduct occurs outside the direct presence of a judge").

See *id.* ¶ 22 (observing that the notice on the bail bond "did not warn that a third party's funds provided for bail could be forfeited to the defendant's creditor or the third party must initiate legal proceedings to secure a refund").

¶ 36    For the reasons discussed above, the judgment of the circuit court of Cook County is reversed.  This matter is remanded for the entry of an order directing the clerk of the circuit court of Cook County to turn over the $25,000 refund to James Kowal.

¶ 37    Reversed; remanded with directions.

---

*Timothy Gibbons v. Chad Kowal*, **2024 IL App (1st) 232124**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County; No. 09 L 3335; the Hon. James E. Hanlon, Jr., Judge presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Carmen A. Gaspero, Gaspero & Gaspero, of Downers Grove, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael D. Haeberle, Patterson Law Firm, LLC, of Chicago, for appellee. |

---